IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VANTAGE COMMODITIES FINANCIAL SERVICES I, LLC, <br><br>                Plaintiff, <br><br> v. <br><br> ASSURED RISK TRANSFER PCC, LCC, *et al.*, <br><br>                Defendants. | Civil Action No. 1:17-cv-01451-KBJ <br><br> Hon. Ketanji Brown Jackson |

**DEFENDANTS WILLIS LIMITED, WILLIS RE INC., AND WILLIS TOWERS WATSON MANAGEMENT (VERMONT), LTD.'S MOTION TO DISMISS COMPAINT**

The Complaint filed by Plaintiff Vantage Commodities Financial Services I, LLC ("Vantage") against Defendants Willis Limited, Willis Re Inc. ("Willis Re"), and Willis Towers Watson Management (Vermont), Ltd. ("Willis Captive Management"), fails to state a claim on which relief can be granted and should be dismissed. As set forth more fully in the accompanying Memorandum of Points and Authorities in Support hereof, the Complaint rests on the unfounded premise that an underlying insured, having failed to recover on a claim from its insurer, Defendant Vantage Re PCC, LLC, now known as Assured Risk Transfer (PCC), LLC ("ART"), is entitled to recovery directly from either the captive manager that performed administrative and ministerial functions for that insurer, or from the broker that put in place reinsurance coverage for that insurer. To that end, Vantage asserts a variety of claims against three separate Willis entities—Willis Limited, Willis Re, and Willis Captive Management—including claims for Breach of Contract, Negligence, Professional Negligence, Negligent Undertaking, and Negligent Misrepresentation. These claims should all be dismissed.

With respect to the breach of contract claims, Vantage does not plead the existence of any contract between it and any of the three Willis defendants.  Nor can Vantage state a claim for breach of contract under a third party beneficiary theory, as it does not assert that it was the intended third-party beneficiary of a contract between any of the Willis defendants and any other party.  With respect to its negligence-based claims, Vantage does not plead any facts establishing that any of the Willis defendants owed it a duty from which such claims could arise.  Instead, the Complaint demonstrates that Willis Captive Management's obligations as provider of captive management services to ART and that Willis Limited's obligations as reinsurance intermediary for ART ran solely to ART.  Finally, with respect to its negligent misrepresentation claim, Vantage cannot meet the heightened pleading standard of Rule 9(b) because it does not assert facts sufficient to identify:  (i) any specific statement made by an individual at Willis Captive Management, Willis Re, or Willis Limited; (ii) why such a statement, if made, was false; (iii) who made the purportedly false statement; (iv) when; and (v) to whom.

Additionally, from the outset of the Complaint, Vantage defines the three Willis entities named as defendants as "collectively, 'Willis,'" and refers to this defined term when setting forth the allegations on which the Complaint is based.  Vantage does not distinguish whatsoever between the three Willis defendants either in setting forth the purported factual predicate for its claims, or in pleading the claims themselves.  As a result, there is no way for Willis Captive Management, Willis Re, Willis Limited, or the Court, to determine which factual allegations pertain to which defendant, or to ensure that any of the claims are adequately pled.  Willis Captive Management, Willis Re, and Willis Limited are additionally entitled to dismissal of Vantage's claims on this basis alone.

Willis Limited, Willis Re Inc., and Willis Towers Watson Management (Vermont), Ltd. request oral argument on this motion.

WHEREFORE, for the foregoing reasons and those set forth in the accompanying Memorandum of Points and Authorities in Support hereof, Defendants Willis Limited, Willis Re Inc., and Willis Towers Watson Management (Vermont), Ltd. respectfully request that this Court grant this Motion to Dismiss the Complaint.  Defendants request that Counts III, IV, V, VI, and VII of the Complaint be dismissed with prejudice.

September 29, 2017                              Respectfully submitted,

                                   _____/s/ *Christopher J. St. Jeanos*_____
                                   Christopher J. St. Jeanos
                                   (admitted *Pro Hac Vice*)
                                   Maxwell A. Bryer
                                   (admitted *Pro Hac Vice*)
                                   WILLKIE FARR & GALLAGHER LLP
                                   787 Seventh Avenue
                                   New York, New York 10019
                                   (212) 728-8730
                                   (212) 728-9730 (facsimile)
                                   cstjeanos@willkie.com

                                   Elizabeth J. Bower (#498480)
                                   WILLKIE FARR & GALLAGHER LLP
                                   1875 K Street, N.W.
                                   Washington, DC 20006-1238
                                   (202) 303-1000
                                   (202) 303-2000 (facsimile)
                                   ebower@willkie.com

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| VANTAGE COMMODITIES FINANCIAL SERVICES I, LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 1:17-cv-01451-KBJ |
| ASSURED RISK TRANSFER PCC, LCC, *et al.*, | Hon. Ketanji Brown Jackson |
| Defendants. | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT BY WILLIS LIMITED, WILLIS RE INC., AND WILLIS <u>TOWERS WATSON MANAGEMENT (VERMONT), LTD.</u>**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................. iii

PRELIMINARY STATEMENT ........................................................................... 1

BACKGROUND ................................................................................................. 2

    **A.**    The Vantage/Glacial Holdings Deal ...................................................... 2

    **B.**    Formation Of ART .............................................................................. 2

    **C.**    Vantage's Purchase Of Insurance From ART ...................................... 3

    **D.**    Reinsurance For ART .......................................................................... 3

    **E.**    Glacial's Default And Subsequent Collapse ......................................... 5

    **F.**    Vantage's Claim For Coverage Under The Credit Insurance Policy ....... 5

    **G.**    The Reinsurer Defendants' Denial Of Coverage ................................... 6

    **H.**    The Complaint ..................................................................................... 6

ARGUMENT ..................................................................................................... 7

**I.**    VANTAGE'S CLAIM FOR BREACH OF CONTRACT AGAINST THE WILLIS DEFENDDANT, COUNT V, SHOULD BE DISMISSED ................................. 7

**II.**    VANTAGE'S CLAIMS FOR NEGLIGENCE, PROFESSIONAL NEGLIGENCE, AND NEGLIGENT UNDERTAKING AGAINST THE WILLIS DEFENDANTS, COUNTS III, IV, AND VI, SHOULD BE DISMISSED. .............................................. 10

    **A.**    The Factual Allegations In The Complaint Do Not Establish That Willis Captive Management Owed A Duty To Vantage. ............................................. 11

    **B.**    The Factual Allegations In The Complaint Do Not Establish That Willis Limited Owed A Duty To Vantage. ................................................................... 12

    **C.**    The Factual Allegations In The Complaint Do Not Establish That Willis Re Owed A Duty To Vantage. ................................................................... 15

**III.**    VANTAGE'S CLAIM FOR NEGLIGENT MISREPRESENTATION, COUNT VII, SHOULD BE DISMISSED. ............................................................................ 15

**IV.**   VANTAGE'S CLAIMS SHOULD ALSO BE DISMISSED BECAUSE THE FACTUAL
ALLEGATIONS ASSERTED BY VANTAGE IN THE COMPLAINT DO NOT
DISTINGUISH AMONG THE WILLIS DEFENDANTS.................................................17

CONCLUSION..............................................................................................................................17

## **TABLE OF AUTHORITIES**

**Cases**                                                                                                     **Page(s)**

*Bode & Greiner LLP v. Knight,*
    808 F.3d 852 (D.C. Cir. 2015) ....................................................................................8

*Burlington Ins. Co. v. Okie Dokie, Inc.,*
    398 F. Supp. 2d 147 (D.D.C. 2005) ....................................................................15, 17

*\*Cambridge Holdings Group, Inc. v. Federal Insurance Co.,*
    357 F. Supp. 2d 89 (D.D.C. 2004) ......................................................................13, 14

*\*Car Sense, Inc. v. American Special Risk, LLC,*
    56 F. Supp. 3d 686 (E.D. Pa. 2014) ...................................................................14

*Chambers v. NASA Federal Credit Union,*
    222 F. Supp. 3d 1 (D.D.C. 2016) .......................................................................8

*Freeland v. Iridium World Commc'ns, Limited,*
    No. CV 99-1002, 2004 WL 7325422 (D.D.C. Sept. 1, 2004) ...........................16

*Lemon v. Kramer,*
    Civil Action No.: 16-2025 (RC), 2017 WL 4060532 (D.D.C. Sept. 11, 2017)...............15

*McDonald's USA, LLC v. Craft,*
    No. 17-cv-00119, 2017 WL 2693477 (D.D.C. June 22, 2017).........................12

*Miango v. Democratic Republic of Congo,*
    243 F. Supp. 3d 113 (D. D.C. 2017) ..................................................................11

*Oehme, van Sweden & Assocs., Inc. v. Maypaul Trading & Servs. Limited,*
    902 F. Supp. 2d 87 (D.D.C. 2012) ....................................................................9, 10

*Page v. Mancuso,*
    999 F. Supp. 2d 269 (D. D.C. 2013) (Jackson, J.) ..........................................2, 7

*Simms v. District of Columbia,*
    699 F. Supp. 2d 217 (D.D.C. 2010) ..................................................................17

*Stancill v. Potomac Elec. Power Co.,*
    744 F.2d 861 (D.C. Cir. 1984) ..........................................................................10

*Toumazou v. Turkish Republic of N. Cyprus,*
    71 F. Supp. 3d 7 (D.D.C. 2014) ........................................................................17

*Trudel v. Suntrust Bank,*
    223 F. Supp. 3d 71 (D. D.C. 2016) ....................................................................8

*United States v. Lequire,*
    672 F.3d 724 (9th Cir. 2012) .........................................................................3

*United States ex rel. Bender v. N. Am. Telecomms., Inc.,*
    750 F. Supp. 2d 1 (D.D.C. 2010) ................................................................17

*In re U.S. Office Products Co. Secs. Litig.,*
    251 F. Supp. 2d 58 (D.D.C. 2003) ..............................................................16


**Foreign Cases**

*Caparo Industries Plc v. Dickman & Ors*
    [1990] UKHL 2 (HL) ...................................................................................11

*Parrot v. Jackson*
    [1996] P.I.Q.R. P394 (AC) ..........................................................................11

*Proton Energy Group SA v. Orlen Lietuva*
    [2013] EWHC 2872, 2013 WL 4788881 (Comm) ........................................8

*San Evans Mar. Inc. v. Aigaion Ins. Co. SA*
    [2014] 1 C.L.C. 883 (QB) .............................................................................9

*Sav. & Inv. Bank Limited (In Liquidation) v. Fincken*
    [2001] EWCA Civ 1639, 2001 WL 1251872 (AC) ......................................15


**Statutes, Rules and Regulations**

Fed. R. Civ. P. 12(b)(6)......................................................................................7

D.C. Code Ann. § 31-3931.04(b)(1) (West 2015) .............................................3


**Foreign Statutes**

Contracts (Rights of Third Parties) Act 1999 c. 31 § 1(3)................................9

Defendants Willis Limited, Willis Re Inc. and Willis Towers Watson Management (Vermont), Limited respectfully submit the following Memorandum of Points and Authorities in Support of their Motion to Dismiss the Complaint ("Compl.") filed by Plaintiff Vantage Commodities Financial Services I, LLC ("Vantage").

## PRELIMINARY STATEMENT

The plaintiff in this case, Vantage, does not allege that it had any contract with the Willis defendants, that it ever asked the Willis defendants to perform any services, or that it even had any contact whatsoever with any of the Willis defendants, ever. Nevertheless, as an alternative to the claims it brings against its insurer and certain reinsurance companies, Vantage asserts five separate counts against three separate Willis entities, and seeks more than $26 million in damages. Regardless of the merits of Vantage's claims against its insurer and the reinsurers, it is clear, on the face of the Complaint, that Willis owed no duties to Vantage—contractual or otherwise—and therefore Vantage's claims against Willis must fail.

Vantage is a claimant under an insurance policy and in this action sues the insurer and reinsurers of that insurance policy. For some unexplained reason, however, Vantage also sued Willis, even though Willis acted merely as an administrative service provider to the insurer and as the reinsurance intermediary that obtained reinsurance coverage for the insurer, and Vantage had absolutely no contracts, dealings, or communications with any of the Willis defendants. Vantage pleads no facts (and cannot plead any facts) that provide Vantage a basis to collect millions of dollars from Willis and there is simply no law that supports these fanciful claims. Each of Vantage's claims against the Willis defendants must be dismissed.

## BACKGROUND

Set forth below are facts and allegations contained in Vantage's Complaint and the documents Vantage attached to the Complaint that are relevant to this motion.[1]

### A.  The Vantage/Glacial Holdings Deal

EDF Trading North America, LLC ("EDFT"), a "global utility wholesaler" (Compl. Ex. 20, at 2), owns Plaintiff Vantage.  (*See* Compl. Ex. 2, at 1.)  Vantage provides credit facilities to energy suppliers and providers, often referred to as Energy Service Companies ("ESCO"), that re-sell electricity and natural gas purchased from EDFT.  (*Id.*)

In January 2013, Vantage and EDFT entered into a "Loan and Services Agreement" (the "LESA") with Glacial Energy Holdings ("Glacial"), an ESCO, pursuant to which Glacial would re-sell electricity and natural gas purchased from EDFT.  (Compl. Ex 2, at 3.)  As part of that transaction, Vantage "extended credit support for the benefit of Glacial in the form of cash, letters of credit, bonds or guarantees . . . ."  (Compl. Ex. 11, at 2.)

### B.  Formation Of ART

Defendant Vantage Re PCC, LLC, now known as Assured Risk Transfer (PCC), LLC ("ART"), is a protected cell captive insurer licensed in Washington, D.C., that was formed in April of 2012 by Paul Palmer, a Managing Partner at Equifin Risk Solutions, LLC.  (Compl. ¶¶ 5, 25–26, 59.)  Under Washington, D.C. law, a "captive insurer"—a special-purpose insurer formed to protect the assets of a single entity—"may be organized as a protected cell captive

---

[1]     All references herein to "Compl. Ex. __" are to the documents attached to the Complaint.  Although on a motion to dismiss, a court "generally does not consider matters beyond the pleadings," it may consider "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, or documents upon which the plaintiff's complaint necessarily relies even if the document is produced not by the plaintiff in the complaint but by the defendant in a motion to dismiss . . . ."  *Page v. Mancuso*, 999 F. Supp. 2d 269, 275 (D.D.C. 2013) (Jackson, J.) (quoting *Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 117, 119–20 (D.D.C. 2011)).

insurer and shall be permitted to form one or more protected cells under this chapter *to insure risks of one or more participants.*"  D.C. Code Ann. § 31-3931.04(b)(1) (West 2015).

Mr. Palmer is the President and sole member of ART.  (Compl. ¶ 27.)  Mr. Palmer retained Defendant Willis Towers Watson Management (Vermont), Limited, formerly known as Willis Management (Vermont), Limited, ("Willis Captive Management") as a vendor to act as the captive manager of ART.  (*Id.* ¶¶ 30, 33.)  Generally, a captive manager provides various administrative services to its clients, including handling the captive's regulatory filings, accounting and financial reporting, and various other legal and administrative services.  (*See id.* ¶ 128.)  *See also United States v. Lequire*, 672 F.3d 724, 726 (9th Cir. 2012).

### C.  Vantage's Purchase Of Insurance From ART

To protect itself against losses that could result from a potential default by Glacial under the LESA, Vantage purchased an insurance policy from ART.  (Compl. ¶ 16, Ex. 1.)  Although ART would later form additional "protected cells" to provide insurance to other entities unrelated to Vantage (*see id.* ¶¶ 86–87), ART's initial cell was formed for the purpose of providing insurance to Vantage.  (*Id.* ¶¶ 25–26.)  ART issued Credit Insurance Policy No. TC2013/001 (the "Credit Insurance Policy") to Vantage Commodities Financial Services, LLC, an affiliate of Vantage and EDFT.  (*Id.* at 16–17, Ex. 1.)  The Credit Insurance Policy incepted on January 11, 2013 and expired on January 11, 2014 (and was not renewed), and provided a maximum of $22 million of coverage to Vantage.  (*Id.* ¶¶ 17, 86.)  Willis Captive Management, Willis Re, and Willis Limited were not insureds, insurers, or otherwise a party to the Credit Insurance Policy.  (Compl. Ex. 1.)

### D.  Reinsurance For ART

In 2012, non-party reinsurance intermediary Gil & Roeser, Inc. ("G&R") was retained by ART to procure reinsurance coverage for ART because ART did not want to be on the risk for

the entire $22 million of coverage provided by the Credit Insurance Policy.  (*See id*. ¶ 75, Ex. 8

at 18.)  By December 28, 2012, G&R had secured $19.8 million of reinsurance coverage—90%

of the $22 million of coverage provided by the Credit Insurance Policy—for the period January

1, 2013 through January 1, 2014 (the "Reinsurance Policy").  (Compl. Exs. 5, 8.)  The coverage

under the Reinsurance Policy was provided by Defendants Hannover Ruckversicherung AG

("Hannover Re") and Partner Reinsurance Europe plc ("Partner Re"), and non-party Allied

World Assurance Company, Limited ("AWAC").  (*Id.*)

In or about March 2013, and subsequent to the inception of the LESA, Defendant Willis

Limited, a U.K.-based reinsurance intermediary that provides "reinsurance advising and

brokerage services," was retained by ART to replace AWAC with other reinsurers.  (*See id*. ¶ 32,

Ex. 7.)  By mid-March 2013, Willis Limited had done so.  While Hanover Re and Partner Re

continued as ART's reinsurers, AWAC was replaced by Defendants Lloyd's of London (Liberty

Syndicate, Syndicate 1206, and Amlin Syndicate) ("Lloyd's"), Caisse Centrale de Reassurance

("CCR"), and Catlin Re Switzerland AG ("Catlin") (collectively with Hannover Re and Partner

Re, the "Reinsurer Defendants").  (*Id.* Ex. 6.)  The Reinsurance Policy continued to provide ART

with $19.8 million of reinsurance coverage.  (*Id.* Ex. 7.)

Not only did the Reinsurance Policy cover claims paid by ART under the Credit

Insurance Policy it had issued to Vantage, it also indemnified ART in respect of "liability that

may accrue as a result of loss or losses under Policies issued by the Company"—all policies—for

all "claims made, losses discovered or losses occurring" during the policy period.  (Compl. Ex. 7,

at 3.)  The Reinsurance Policy identified Willis Limited and its U.S. affiliate, Defendant Willis

Re, Inc. of North Carolina ("Willis Re"), as the reinsurance intermediaries for the policy.  (*Id.* at

4.)  Willis Captive Management, Willis Re, and Willis Limited, however, were not insureds,

insurers, or otherwise a party to the Reinsurance Policy.  (Compl. Ex. 7.)  Further, although

Willis Re is identified as an intermediary for the Reinsurance Policy, the Complaint contains no

factual allegations against Willis Re, an admission by Vantage that Willis Re had no

involvement in procuring reinsurance for ART.

### E.  Glacial's Default And Subsequent Collapse

On November 11, 2013, after Glacial had failed to make a payment that was due under

the LESA, Vantage declared Glacial in default.  (Compl. ¶¶ 18, 82.)  On April 10, 2014, after

efforts to bring Glacial into compliance with the terms of the LESA had failed, Glacial filed for

bankruptcy.  (*Id.* ¶ 89.)  On June 10, 2014, an auction was held for Glacial's assets, and the

bankruptcy proceeding was eventually concluded.  (*Id.* Ex. 2, at 5.)  Vantage claims that it lost

more than $44 million as a result of Glacial's bankruptcy.  (*Id.* ¶ 93, Ex. 2 at 7.)

### F.  Vantage's Claim For Coverage Under The Credit Insurance Policy

On November 19, 2014, Vantage submitted a Proof of Loss to ART, seeking $19,178,666

under the Credit Insurance Policy for the losses it claims to have suffered from Glacial's

collapse.  (Compl. ¶ 94, Ex. 2, at 3.)  On April 6, 2015, ART rejected that claim, asserting that

Vantage "had not maintained the Minimum Collateral Level (MCL) required by the [Credit

Insurance] Policy [and thus] failed to satisfy a condition precedent to its coverage."  (*Id.* ¶ 19,

Ex. 2, at 2, 5.)  ART retained Debevoise & Plimpton LLP, the law firm that helped create it, to

represent it in connection with Vantage's claim.  (*Id.* ¶ 101.)

On November 10, 2015, Vantage commenced arbitration against ART.  (Compl. ¶ 20, Ex.

3, at 3.)  On December 30, 2016, after cross-motions for summary judgment were filed, the

Arbitration Panel held for Vantage, finding that the MCL provision was not breached and that

ART owed Vantage coverage for the losses it suffered as a result of Glacial's default.  (*Id.* ¶ 136,

Ex. 2, at 8.)  The Panel awarded Vantage $22 million under the Credit Insurance Policy, plus

interest and costs, bringing the total award to $25,514,037.50.  (*Id.* ¶ 21.)  On May 2, 2017, the New York Supreme Court confirmed the award and entered judgment in favor of Vantage, and against ART, in the amount of $26,288,351.80 (the "Judgment").  (*Id.* ¶ 22.)

### G.  The Reinsurer Defendants' Denial Of Coverage

The Reinsurer Defendants claim that ART has never made a formal demand for coverage for the Judgment under the Reinsurance Policy.  (Compl. Ex. 20, at 2.)  Nevertheless, on May 12, 2017, the Reinsurer Defendants denied coverage for the Judgment asserting that ART breached Article XV of the Reinsurance Policy, which relates to providing notice of claims made against ART.  (*Id.* ¶¶ 140, 147.)  Although the Reinsurer Defendants concede that some or all of the individual reinsurers knew generally about Glacial's default, Glacial's plan to file for bankruptcy, the bankruptcy proceedings, Vantage's insurance claim, ART's denial of that claim, the ensuing arbitration proceedings, and the ultimate arbitration award, they claim that ART failed to provide them with proper notice of the precise outcome of Glacial's bankruptcy proceeding, the Proof of Loss, the initiation of arbitration, and developments in the arbitration that led to the Award against ART. [2]  (Compl. ¶ 139, Ex. 20, at 5.)

### H.  The Complaint

Vantage filed this Complaint on July 20, 2017.  In Count I, Vantage asserts a claim for breach of contract against the Reinsurer Defendants, arguing that their refusal to pay to Vantage the reinsurance proceeds that may be due to ART under the Reinsurance Policy is a breach of the terms and conditions of the Reinsurance Policy.  (*Id.* ¶¶ 151–54.)  In Count II, Vantage repeats

---

[2]     It should be noted that, while not relevant for the purposes of this motion to dismiss, Willis Limited disputes any allegation that it did not pass along to the Reinsurer Defendants all notices and documentation it received from ART regarding the Credit Insurance Policy, Glacial's default, Vantage's claim against ART, and the subsequent arbitration.

the allegations from Count I and seeks a declaratory judgment that ART and the Reinsurer

Defendants are required to pay Vantage the amount of the Judgment.  (*Id.* ¶¶ 155–62.)

In Counts III through VII, Vantage asserts claims against Willis Captive Management,

Willis Re, and Willis Limited, collectively, for Breach of Contract, Negligence, Professional

Negligence, Negligent Undertaking, and Negligent Misrepresentation.  (Compl. ¶¶ 163–87.)  To

the extent Vantage cannot recover the amount of the Judgment from either ART or the Reinsurer

Defendants, Vantage seeks to recover those amounts from the Willis defendants.  Vantage claims

that although Vantage has never been a client of, nor had any dealings with, any of the Willis

defendants, those defendants nevertheless owed Vantage a duty to ensure that ART properly

preserved Vantage's purported rights under the Reinsurance Policy.  For the reasons that follow,

Vantage's claims against Willis Captive Management, Willis Re, and Willis Limited should be

dismissed.

## ARGUMENT

"A court must dismiss a claim for relief under Rule 12(b)(6) when the complaint 'fail[s]

to state a claim upon which relief can be granted[.]'  Fed. R. Civ. P. 12(b)(6).  In evaluating a

motion to dismiss, the court 'must accept as true all factual allegations in the complaint . . . .'"

*Page v. Mancuso*, 999 F. Supp. 2d 269, 274 (D.D.C. 2013).  However, "the Court need not

accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in

the complaint, nor must the Court accept plaintiff's legal conclusions."  *Id.* at 275 (internal

citations omitted).

## I.  VANTAGE'S CLAIM FOR BREACH OF CONTRACT AGAINST THE WILLIS DEFENDDANT, COUNT V, SHOULD BE DISMISSED.

In Count V of the Complaint, Vantage asserts that "Willis Limited, Willis Re, and Willis

Management entered into valid and binding contractual agreements to convey timely and

sufficient information regarding Vantage's loss from the Glacial transaction to Reinsurer Defendants." (Compl. ¶ 173.)  Vantage, however, does not assert—nor could it assert—any facts establishing that it had a contract with Willis Captive Management, Willis Re, or Willis Limited because *there are no contracts between it and these Willis defendants*.

Instead, Vantage references only two contracts in its Complaint:  (i) the Credit Insurance Policy, which was a contract between ART and Vantage; and (ii) the Reinsurance Policy, a contract between the Reinsurer Defendants and ART, under which Vantage enjoyed no express rights.  (*See* Compl. Exs. 1, 5–7.)  As discussed above, Willis Captive Management, Willis Re, or Willis Limited were not insurers, insureds, or otherwise a party to either the Credit Insurance Policy or the Reinsurance Policy.  (*See supra* at Background, § D.)  It is for these reasons that Vantage cannot maintain a breach of contract claim against any of the Willis entities.

Under controlling law, Vantage's failure to plead facts establishing the existence of any contract between Vantage and any of the Willis defendants, or the terms and conditions of any such contract, requires the dismissal of Vantage's claim for breach of contract.  *See Chambers v. NASA Federal Credit Union*, 222 F. Supp. 3d 1, 9 (D.D.C. 2016) (a party alleging breach of contract must plead facts establishing that the defendant "owed [plaintiff] a contractual obligation and then breached it" and must set forth the relevant terms and conditions of that contract); *see also Proton Energy Group SA v. Orlen Lietuva* [2013] EWHC 2872, 2013 WL 4788881, at *39 (Comm) (same).[3]

---

[3]     A federal court sitting in diversity must apply the choice-of-law rules of the forum state in which it sits—here, the District of Columbia.  *See Trudel v. Suntrust Bank*, 223 F. Supp. 3d 71, 82 (D.D.C. 2016).  In contract cases, Washington, D.C. courts consider, among other factors, the place of contracting and the place of performance in determining what substantive law to apply.  *See Bode & Greiner LLP v. Knight*, 808 F.3d 852, 864 (D.C. Cir. 2015).  Since none of the Willis defendants had a contract with or performed any services for Vantage, there is no way to determine either the place of contracting or performance.  However, the allegations in the Complaint establish that Willis Captive Management's only involvement with the matters at issue in this case was providing captive management services to ART, which were provided in Washington, D.C.  (*See supra* at Background, § B)  Further, the allegations in the Complaint

Although Vantage does not assert that it was the intended third-party beneficiary of any contract between the Willis defendants and any other party (*see* Compl. ¶¶ 172–75), certain allegations in the Complaint possibly suggest that Vantage's claims may be premised on such a theory. (*See, e.g.*, Compl. ¶ 57 ("ART PCC and Willis . . . knew and understood that the purpose of the reinsurance . . . in the Credit Insurance Binders was to compensate Vantage in the event it suffered a loss.").) To the extent that is the case, any such claim also must fail.

Under controlling law, a plaintiff that is not a party to a contract may—in limited circumstances—pursue a claim for breach of that contract if the plaintiff can plead facts establishing "'that the contracting parties had an express or implied intention to benefit directly' the party urged to be a third-party beneficiary . . . . 'An indirect interest in the performance of the undertakings is insufficient.'" *Oehme, van Sweden & Assocs., Inc. v. Maypaul Trading & Servs. Limited*, 902 F. Supp. 2d 87, 100 (D.D.C. 2012); *see also* Contracts (Rights of Third Parties) Act 1999 c. 31 § 1(3); *San Evans Mar. Inc. v. Aigaion Ins. Co. SA* [2014] 1 C.L.C. 883, 894 (QB) (holding that the plaintiff was not a third-party beneficiary of the contract).

The factual allegations in Vantage's Complaint do not satisfy these requirements. First, as noted above (*see supra* at Background, § D), Willis Captive Management, Willis Re, and Willis Limited were not insureds, insurers, or otherwise parties to either the Credit Insurance Policy or the Reinsurance Policy. Thus, Vantage cannot pursue a third-party beneficiary claim against the Willis defendants under those contracts. Second, and again as noted above (*see supra* at Argument, § I), Vantage has not pled facts establishing the existence of any contract between

---

establish that Willis Limited's only involvement with the matters at issue in this case was providing reinsurance brokering services for ART, which were provided in the United Kingdom. (*See supra* at Background, § D.) Thus, under Washington, D.C.'s choice of law rules, it is likely that the law of Washington D.C. would apply to claims against Willis Captive Management and U.K. law would apply to claims against Willis Limited. Since Wills Re did not perform any services for any party in this matter, the claims against Willis Re should be dismissed regardless of which law applies.

any party and the Willis defendants, let alone establishing that the "contracting parties had an express or implied intention to [directly] benefit" Vantage under any such contract. *See Oehme*, 902 F. Supp. 2d at 100. Thus, the facts pled by Vantage in its Complaint do not support any assertion that it is entitled to pursue a breach of contract claim against the Willis defendants based on a third-party beneficiary theory.

## II. VANTAGE'S CLAIMS FOR NEGLIGENCE, PROFESSIONAL NEGLIGENCE, AND NEGLIGENT UNDERTAKING AGAINST THE WILLIS DEFENDANTS, COUNTS III, IV, AND VI, SHOULD BE DISMISSED.

The allegations in Count III-Negligence, Count IV-Professional Negligence, and Count VI-Negligent Undertaking are virtually identical to one another and all fail to state a claim. In those counts, Vantage asserts that "in the course of providing reinsurance and captive management services to ART," the Willis defendants "*agreed to advise ART PCC* on the procurement and maintenance of reinsurance . . . ." (Compl. ¶ 164 (emphasis added); *see also id.* ¶¶ 169, 177.)[4] Vantage also asserts that the Willis defendants breached the agreement to advise ART by failing to ensure that proper notice was provided to Reinsurer Defendants and by "[f]ailing to disclose and misrepresenting to Vantage that coverage under the Reinsurance Agreements would not be available to compensate Vantage in the event it suffered a loss covered

---

[4]     In negligence cases, Washington, D.C. courts consider "the place of the injury, the place where the contact occurred, the domicile of the parties, and the place where the relationship between the parties is centered" in determining what substantive law to apply. *Stancill v. Potomac Elec. Power Co.*, 744 F.2d 861, 864 n.16 (D.C. Cir. 1984). Willis Captive Management's services were performed solely for ART, ART is domiciled in Washington, D.C., its relationship with Willis Captive Management was centered in Washington, D.C., and to the extent ART suffered any "injury" as a result of the services provided by Willis Captive Management, those injuries would have occurred in Washington, D.C. as well. (*See supra* at Background, § B.) While Willis Limited's services also were performed solely for ART, the allegations in the Complaint demonstrate that all of Willis Limited's conduct and contact with ART occurred in the United Kingdom. (*See e.g. id.* at ¶¶ 7, 10–15.) Thus, under applicable choice-of-law rules, the law of the Washington, D.C. would likely apply to negligence-based claims against Willis Captive Management and U.K. law would likely apply to negligence-based claims against Willis Limited. Again, since Willis Re did not perform any services for any party in this matter, the claims against Willis Re should be dismissed regardless of which law applies.

under the Credit Insurance Policy." (Compl. ¶ 165; *see also id.* ¶¶ 170, 179.) These claims must be dismissed.

These claims fail as a matter of law. Among other things, to plead a cause of action for negligence or negligent undertaking, a plaintiff must plead facts that, taken as true, would establish "a duty of care owed by the defendant to the plaintiff . . . ." *Miango v. Democratic Republic of Congo*, 243 F. Supp. 3d 113, 137 (D.D.C. 2017) (granting motion to dismiss)).[5] The same is true under U.K. law. *See, e.g.*, *Parrot v. Jackson* [1996] P.I.Q.R. P394, P397 (AC) ("In an action for negligence, the cause of action has two elements: (1) the breach of duty to the plaintiff, *i.e.* in this case the negligence, and (2) damage suffered by the plaintiff."); *Caparo Industries Plc v. Dickman & Ors* [1990] UKHL 2 (HL) (same). Vantage fails to plead facts establishing that any of the Willis defendants owed any such duty of care to Vantage.

### A. The Factual Allegations In The Complaint Do Not Establish That Willis Captive Management Owed A Duty To Vantage.

The allegations in the Complaint establish that Willis Captive Management was retained by ART to manage certain administrative tasks on ART's behalf, including regulatory filings, accounting and financial reporting, and various legal and administrative services. (*See supra* at Background, § B.) While the Complaint suggests that individuals at Willis Captive Management knew that one of ART's insureds was Vantage (*see* Compl. ¶¶ 43, 57), there are no allegations anywhere in the Complaint that anyone at Willis Captive Management ever spoke to or met with anyone at Vantage. More importantly, there are also no allegations in the Complaint that Willis Captive Management undertook a duty to provide any services to Vantage whatsoever. Of course, as a captive manager providing administrative services to an insurance company, it is not

---

[5]    Despite a diligent search, Willis Captive Management has not been able to locate any cases establishing that a claim for professional negligence exists under the law of Washington, D.C. with respect to the services provided to a captive insurer by a captive manager or a reinsurance intermediary.

surprising that Willis Captive Management had no interactions with any of the policyholders of that insurance company and that it never took on any duties to such policyholders.

Indeed, as Vantage itself acknowledges, Willis Captive Management's dealings were with Paul Palmer, President of ART.  (*See, e.g.*, *id.* ¶¶ 91, 93, 101, 103, 112.)  Moreover, the allegations in the Complaint establish that Willis Captive Management continued to perform the services described above for ART after the January 1, 2014 expiration of the Credit Insurance Policy issued by ART to Vantage.  (*See* ¶¶ 85–87.)  Thereafter, by March 2014, ART had established additional cells and sold "reinsurance-backed insurance policies to other insureds . . . ."  (*See id.*)  In other words, the only duty Willis Captive Management owed was to ART, not to any of ART's various insureds.  Accordingly, Vantage's claims for negligence, professional negligence, and negligent undertaking against Willis Captive Management should be dismissed.  *See McDonald's USA, LLC v. Craft*, No. 17-cv-00119, 2017 WL 2693477, at *5 (D.D.C. June 22, 2017) (granting motion to dismiss defendant's counterclaim for negligence where allegations of complaint did not establish plaintiff owed a duty to defendant).

### B.  The Factual Allegations In The Complaint Do Not Establish That Willis Limited Owed A Duty To Vantage.

Vantage also has pled no facts that establish that Willis Limited owed a duty to Vantage, much less a duty to ensure that ART's reinsurers would pay any claims submitted by ART. Willis Limited, a reinsurance intermediary, was retained several months after the Credit Insurance Policy incepted to procure additional reinsurance coverage for ART.  (Compl. ¶¶ 48– 49, 73–76; Exs. 6, 7.)  There are no facts asserted in the Complaint that anyone at Willis Limited ever met with or spoke to anyone at Vantage, much less undertook any duties to Vantage.  And, there is no factual or legal basis for a claim that Willis Limited somehow took on a duty to ensure that ART could collect on the reinsurance ART had purchased if a claim was ever made

against it.  Further, as noted above, Willis Limited's services were not directed solely to protecting Vantage's interests.  As Vantage acknowledges in the Complaint, Willis Limited continued to work with ART and the Reinsurer Defendants for years after the Credit Insurance Policy issued by ART to Vantage expired.  (*See id.* ¶¶ 85–87.)   As a reinsurance intermediary between ART and the Reinsurer Defendants, Willis Limited did not owe a duty to Vantage (or any of ART's other various insureds).

It is not surprising that case law from both Washington, D.C. and other jurisdictions supports this conclusion.  For example, in *Cambridge Holdings Group, Inc. v. Federal Insurance Co.*, 357 F. Supp. 2d 89 (D.D.C. 2004), the court rejected a claim that was similar to the claim Vantage asserts against Willis Limited.  Cambridge loaned money to three borrowers in connection with the purchase of a racetrack.  *Id.* at 91.  A portion of the funds was to be held in escrow by a law firm, which was required to procure an insurance policy—known as a fidelity bond—to secure those funds.  *Id.* at 91–92.  The law firm purchased the insurance policy from Chubb, through an insurance agent, Babb, that named the law firm as the insured and Cambridge as the "loss payee."  *Id.* at 92.

The funds provided by Cambridge were withdrawn from the law firm's escrow account without Cambridge's knowledge or permission; the law firm refused to pay back the funds; and the law firm refused to make a claim under the insurance policy.  *Cambridge Holdings*, 357 F. Supp. 2d at 92.  Cambridge sued Babb, among others, arguing that although it did not have a contract with Babb, it believed Babb "undertook to provide the [insurance policy]" for its benefit.  *Id.* at 94.  The court disagreed, holding that Babb, *as an insurance intermediary* retained by the law firm, owed no duty to Cambridge, even though Cambridge was named as the "loss payee" under the policy.  *Id.*  (*See also* Compl. ¶ 17 (Vantage asserting it "is the loss payee under

- 13 -

the Policy").)  The court dismissed Cambridge's claims against Babb, with prejudice, finding that "no set of facts alleged by the plaintiff would entitle it to relief."  *Id.*

A similar result was reached by the court in *Car Sense, Inc. v. American Special Risk, LLC*, 56 F. Supp. 3d 686 (E.D. Pa. 2014).  Car Sense, a used car retailer, sold "Vehicle Service Agreements" ("VSAs") to its customers, "under which the buyer of a used car could pay a one-time fee in exchange for the right to have his or her car repaired by Car Sense at no further cost during the term of the VSA."  *Id.* at 690.  To make the VSA program more attractive to buyers, Car Sense entered into a "Buy Back Guarantee" ("BBG") program with Signet Financial Group, Inc. ("Signet"), pursuant to which Signet agreed to refund the cost of the VSA to the used car buyer if they did not need any service during the VSA period.  *Id.*  Signet purchased reinsurance protection for the BBG program from Hannover Re, with the assistance of reinsurance intermediary American Special Risk, LLC ("ASR").  *Id.* at 690–91.

As it turned out, Signet was undercapitalized and did not have sufficient reserves to pay claims under the BBG, or to make sufficient payments to trigger the reinsurance from Hannover Re.  *Id.* at 691.  Car Sense sued reinsurance intermediary ASR, among others, asserting various claims.  *Id.* at 690.  The Court dismissed Car Sense's claims against ASR, explaining as follows:

> Car Sense has alleged that ASR acted as Signet's reinsurance intermediary and broker in negotiating the reinsurance agreement . . . .  Car Sense has not, however, alleged any sort of relationship between *itself* and ASR [and] [t]here is no express intention to benefit Car Sense in the reinsurance agreement . . . . [As a result,] Car Sense has not shown that it or BBG customers were third party beneficiaries under the reinsurance agreement.  Nor has Car Sense alleged any other relationship between it and ASR

Sufficient to provide the basis for its claims.  *Id.* at 694.  The same result should follow here.

Willis Limited, a reinsurance intermediary between ART and the Reinsurance Defendants, owed no duty to Vantage—an insured of ART—on which a negligence-based claim can be based.

Vantage's claims for negligence, professional negligence, and negligent undertaking against Willis Limited should be dismissed, with prejudice.

###   C.  The Factual Allegations In The Complaint Do Not Establish That Willis Re Owed A Duty To Vantage.

As discussed above (*supra* at Background, § D), the Complaint does not contain any allegations against Willis Re.  Willis Re should be dismissed for this reason alone.  Nevertheless, all arguments made on behalf of Willis Limited also apply to Willis Re and Vantage's negligence-based claims against Willis Re should be dismissed for those reasons as well.

## III.   VANTAGE'S CLAIM FOR NEGLIGENT MISREPRESENTATION, COUNT VII, SHOULD BE DISMISSED.

In Count VII-Negligent Misrepresentation, Vantage asserts that the Willis defendants "made misrepresentations of fact and omissions to Vantage concerning the reinsurance intended to back the Credit Insurance Policy . . . ."  (Compl. ¶ 183.)  Under District of Columbia law, "a claim for negligent misrepresentation requires the claimant to show [among other things] that . . . the defendant made a false statement or omission of a fact" and that the plaintiff "to [its] detriment relied on the false information . . . ."  *Burlington Ins. Co. v. Okie Dokie, Inc.*, 398 F. Supp. 2d 147, 153–54 (D.D.C. 2005) (quotations omitted).[6]

Additionally, plaintiffs alleging negligent misrepresentation must meet the heightened pleading standards of Rule 9(b), which means that the plaintiff must allege facts establishing the "'time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud,' as well as the individuals involved." *Lemon v. Kramer*, Civil Action No.: 16-2025 (RC), 2017 WL 4060532, at *12 (D.D.C. Sept. 11, 2017);

---

[6]     Under U.K. law, to establish a claim for negligent misrepresentation, the plaintiff must show "(1) a representation made to the claimant by the defendant; (2) the falsity of the representation; (3) that the misrepresentation was material and was intended to do and did affect the mind of the claimant; (4) the alteration by the claimant of his position in consequence; … [(5)] damage."  *Sav. & Inv. Bank Limited (In Liquidation) v. Fincken* [2001] EWCA Civ 1639, 2001 WL 1251872, at *34 (AC).

*see also Freeland v. Iridium World Commc'ns, Limited*, No. CV 99-1002, 2004 WL 7325422, at
*4 (D.D.C. Sept. 1, 2004) ("Fed. R. Civ. P. 9(b) requires a plaintiff to '(1) specify the statements
that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the
statements were made, and (4) explain why the statements were fraudulent'").  Vantage fails to
meet this burden with respect to the negligent misrepresentation claim it asserts against the
Willis defendants.

In Count VII, Vantage asserts that the Willis defendants failed to disclose and
misrepresented to Vantage that coverage under the Reinsurance Policy would not be available to
compensate Vantage in the event it suffered a loss covered under the Credit Insurance Policy;
that the Credit Insurance Policy would be ceded on the same terms, conditions and settlements as
the original policy; and that they would not convey information regarding Vantage's loss from
the Glacial transaction to Reinsurer Defendants.  (Compl. ¶ 183.)  Although these allegations
provide a general description of the purported misrepresentations, they are clearly not sufficient
to meet the heightened pleading standards of Rule 9(b).

Specifically, Vantage does not assert facts sufficient to identify:  (i) any specific
statement made by an individual at Willis Captive Management, Willis Re, or Willis Ltd;
(ii) why such a statement, if made, was false; (iii) who made the purportedly false statement;
(iv) when; and (v) to whom.  Furthermore, Vantage does not allege that any specific individual at
Vantage relied on any such alleged misrepresentation, much less, that such reliance, if it
occurred, was objectively reasonable.  *See In re U.S. Office Products Co. Secs. Litig.*, 251 F.
Supp. 2d 58, 74 (D.D.C. 2003).  Vantage's failure to meet the requirements of Rule 9(b) pleading
in support of its claim for negligent misrepresentation mandates dismissal of that claim against

the Willis defendants.  *See Burlington*, 398 F. Supp. 2d at 153–54; *Simms v. District of Columbia*, 699 F. Supp. 2d 217, 226 (D.D.C. 2010).

## IV.   VANTAGE'S CLAIMS SHOULD ALSO BE DISMISSED BECAUSE THE FACTUAL ALLEGATIONS ASSERTED BY VANTAGE IN THE COMPLAINT DO NOT DISTINGUISH AMONG THE WILLIS DEFENDANTS.

As yet another basis for dismissal, Vantage makes no effort to distinguish between the three Willis defendants when pleading its claims, instead asserting each of its five counts collectively against "Willis Limited, Willis Re, and Willis Management. . . ."  (Compl. ¶¶ 164, 168, 173, 177, 183.)  A plaintiff, however, "cannot satisfy the minimum pleading requirements under Rule 8 of the Federal Rules of Civil Procedure by 'lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct.'"  *Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 21–22 (D.D.C. 2014) (citations omitted).

This rule is even more strictly enforced with respect to claims, such as claims for negligent misrepresentation, that are subject to the stringent pleading requirements of Rule 9(b).  *See United States ex rel. Bender v. N. Am. Telecomms., Inc.*, 750 F. Supp. 2d 1, 6 (D.D.C. 2010) (dismissing fraud claim under Rule 9(b) because "a complaint must make specific allegations against each individual defendant rather than collective allegations against 'each of the above-named Defendants'").  Vantage's claims against Willis Captive Management, Willis Re, and Willis Limited should be dismissed for this reason as well.

## CONCLUSION

For all the foregoing reasons, Defendants Willis Limited, Willis Re Inc., and Willis Towers Watson Management (Vermont), Limited respectfully submit that all claims asserted against them in the Complaint filed by Plaintiff Vantage Commodities Financial Services I, LLC should be dismissed, with prejudice.

Dated: New York New York.                          Respectfully submitted,
      September 29, 2017


                                                   ___ /s/ *Christopher J. St. Jeanos* _____
                                                   Christopher J. St. Jeanos
                                                   (admitted *Pro Hac Vice*)
                                                   Maxwell A. Bryer
                                                   (admitted *Pro Hac Vice*)
                                                   WILLKIE FARR & GALLAGHER LLP
                                                   787 Seventh Avenue
                                                   New York, New York 10019
                                                   (212) 728-8730
                                                   (212) 728-9730 (facsimile)
                                                   cstjeanos@willkie.com

                                                   Elizabeth J. Bower (#498480)
                                                   WILLKIE FARR & GALLAGHER LLP
                                                   1875 K Street, N.W.
                                                   Washington, DC 20006-1238
                                                   (202) 303-1000
                                                   (202) 303-2000 (facsimile)
                                                   ebower@willkie.com