# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**VANTAGE COMMODITIES FINANCIAL SERVICES I, LLC**,

Plaintiff,

v.

**ASSURED RISK TRANSFER PCC, LLC**, *et al*.,

Defendants.

Case No. 1:17-cv-01451 (TNM)

## MEMORANDUM OPINION

Vantage Commodities Financial Services I, LLC won a multi-million dollar arbitration award against Assured Risk Transfer PCC, LLC, or ART.  Now Vantage wants the money. Although the arbitration award represents the proceeds of a credit insurance policy that ART sold to Vantage, ART says it cannot pay by itself because it counted on help from reinsurance companies.  And the companies that reinsured ART's liability under the insurance policy have refused to help.  So Vantage has sued ART and the reinsurance companies.  It has also sued Willis Limited, Willis Re Inc., and Willis Towers Watson Management (Vermont), Ltd.—related companies that Vantage says offered ART their services in captive insurance management and as reinsurance brokers and intermediaries.  The reinsurance companies and the Willis companies have filed Motions to Dismiss.  Because Vantage failed to establish the Court's personal jurisdiction over the reinsurance companies, their Motions to Dismiss will be granted.  And because Vantage did not state a contract claim but has stated several negligence claims against the Willis Defendants, their Motion to Dismiss will be granted in part and denied in part.

# I.    BACKGROUND

This case began with a series of related financial transactions.  First, Vantage extended $44 million in credit to an energy company.  Compl. ¶ 93.  Second, ART insured Vantage against the risk that the energy company would default, up to $22 million.  *Id.* ¶ 17.  Third, the Willis companies helped ART reinsure 90% of its liability by brokering reinsurance contracts with several other companies, including the seven reinsurance companies that are defendants here.[1]  Then the energy company defaulted and went bankrupt.  *Id.* ¶¶ 82, 89.

Vantage submitted proof of loss to ART to collect on its insurance policy, but ART denied the claim based on Vantage's purported failure to comply with a collateralization requirement in that policy.  *Id.* ¶¶ 19, 94.  So Vantage presented its claim to an arbitration panel, which determined that Vantage had met its collateralization obligations and that ART owed Vantage $22 million in damages, plus several million in interest and costs.  *Id.* ¶¶ 20-21, 136. The Supreme Court of New York confirmed the award in the amount of $26,288,351.80 plus post-judgment interest that continues to accrue.  *Id.* ¶ 22.

Vantage has not received the funds.  *Id.* ¶ 24.  ART told Vantage that the only assets it has to pay the judgment are a $2.2 million letter of credit and its reinsurance policies.  *Id.* ¶ 134. And the Reinsurer Defendants have refused to pay ART, claiming that ART and the Willis companies violated the terms of the reinsurance agreements by failing to provide them prompt notice of Vantage's loss.  *Id.* ¶¶ 139-142.  The Reinsurer Defendants have also rebuffed

---

[1]  The defendant reinsurance companies, also referred to in the parties' submissions and in this opinion as the Reinsurer Defendants, are Hannover Ruckverishcerung AG, Partner Reinsurance Europe PLC, Syndicate 4472, Syndicate 2001, Syndicate 1206, Catlin Re Switzerland, and Caisse Centrale De Réassurance.  Compl. 3.

Vantage's efforts to collect, claiming that Vantage has no contractual right to demand payment directly from them. *Id.* ¶ 150.

Vantage has now turned to federal court, filing a Complaint that names ART, the seven Reinsurer Defendants, and the three Willis companies as defendants.[2] Vantage asserts breach of contract claims against the Reinsurer Defendants and asks the Court for declaratory judgment establishing their contractual obligations. *Id.* ¶¶ 152-54, 162. It also asserts breach of contract and negligence claims against the Willis Defendants. *Id.* ¶¶ 163-187.[3] The Reinsurer Defendants have filed two Motions to Dismiss, and the Willis Defendants have filed one.

## II.     ANALYSIS

### A. The Court Cannot Exercise Personal Jurisdiction Over the Reinsurer Defendants

To hear a claim against a defendant, a court must have personal jurisdiction over that defendant. There are three requirements for a court to exercise personal jurisdiction. First, the state's long-arm statute must reach the defendant. *GTE New Media Servs. Inc. v. BellSouth Corp.*, 199 F.3d 1343, 1347 (D.C. Cir. 2000). Second, the exercise of jurisdiction must comport with the constitutional requirements of due process. *Id.* Third, service of summons must take place to assert the court's jurisdiction. *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). The plaintiff bears the burden of establishing a basis for personal jurisdiction. *Crane v. New York Zoological Soc.*, 894 F.2d 454, 456 (D.C. Cir. 1990).

---

[2] This Court has subject matter jurisdiction over Vantage's claims under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000. *See* Pl.'s Supp. Filing.

[3] Only one of the Complaint's seven counts purports to be a claim against ART. This count seeks declaratory judgment about the contractual rights of Vantage and the contractual obligations of the Reinsurer Defendants. *Id.* ¶ 162. Vantage apparently names ART only as an interested party—not as one against which it seeks relief. *Id.* ¶ 160.

### 1. The District of Columbia's Long-Arm Statute Reaches the Reinsurers

The District of Columbia's long-arm statute authorizes courts to "exercise personal jurisdiction over a person, who acts directly or by an agent, as to a claim for relief arising from the person's . . . transacting any business in the District of Columbia." D.C. Code § 13-423(a)(1). It also authorizes jurisdiction over persons defending against claims that arise from "contracting to insure or act as surety for or on any person, property, or risk, contract, obligation, or agreement located, executed, or to be performed within the District of Columbia at the time of contracting, unless the parties otherwise provide in writing." D.C. Code § 13-423(a)(6). Vantage argues that I have jurisdiction over the Reinsurer Defendants under both these prongs of the long-arm. Pl.'s Opp. to Reinsurer Defs.' Mots. Dismiss 12-14.

Under the insurance prong of the statute, Vantage correctly observes that the Reinsurer Defendants contracted to insure ART, a legal person located in the District of Columbia at the time of contracting. *Id.* at 13. The Reinsurer Defendants do not contest this. Instead, they claim they are beyond the reach of the long-arm statute because Vantage cannot assert rights under their contracts with ART and so can make no claim arising from those contracts. Memo. ISO Mot. Dismiss by Caisse Centrale De Réassurance, Hannover Ruckverishcerung AG, and Partner Reinsurance Europe PLC (First Reinsurer Defs.' Memo. ISO Mot. Dismiss) 14; Reply ISO First Reinsurer Defs.' Mot. Dismiss 5-6.[4] But this argument goes to the merits rather than to jurisdiction. And in any case, the long-arm's "arising from" requirement is satisfied "when the claim has a discernible relationship" to the District-related activity. *I Mark Mktg. Servs., LLC v. Geoplast S.p.A.*, 753 F. Supp. 2d 141, 157 (D.D.C. 2010). Here, Vantage's claim against the

---

[4] The other Reinsurer Defendants filed a separate Motion to Dismiss that contests only the due process and service requirements for exercising personal jurisdiction. Memo. ISO Mot. Dismiss by Syndicate 4472, Syndicate 2001, Syndicate 1206, and Catlin Re Switzerland (Second Reinsurer Defs.' Memo. ISO Mot. Dismiss) 10.

reinsurers has a clear relationship to the reinsurers' contracts with ART. It therefore arises from the Reinsurer Defendants' contracts to insure a person in the District and falls within the scope of the District's long-arm statute.[5]

Alternatively, this Court has jurisdiction under the "transacting any business" prong of the statute for the reasons explained in the due process analysis below. *See Thompson Hine, LLP v. Taieb*, 734 F.3d 1187, 1189 (D.C. Cir. 2013) (holding that the "transacting any business" prong "provide[s] jurisdiction to the full extent allowed by the Due Process Clause").

**2. The Exercise of Jurisdiction Comports with Due Process**

The Due Process Clause limits a court's jurisdiction to defendants who "have certain minimum contacts with ['the territory of the forum,' which is to say, the geographic area under the court's authority,] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Depending on the defendant's forum contacts, a court's personal jurisdiction over a defendant may be general, allowing the court to hear any claim against the defendant, or specific, allowing the court to hear claims against the defendant only if those claims arise from the defendant's forum contacts. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011).

A district court may exercise general jurisdiction over all claims against a corporate defendant if the corporation's "affiliations with the State are so continuous and systematic as to render [it] essentially at home" in the territory subject to the court's authority. *Daimler AG v. Bauman*, 571 U.S. 117, 761 (2014). Although the Supreme Court has not foreclosed the

---

[5] The Reinsurer Defendants also argue that they "did not do business with ART in the District of Columbia," citing declarations showing that they negotiated the contract mostly by email and phone, without meeting in the District. First Reinsurer Defs.' Memo. ISO Mot. Dismiss 14. But the insurance prong of the long-arm statute does not require doing business in the District. *See* D.C. Code § 13-423(a)(6).

possibility of an "exceptional case," courts generally consider a corporation at home only in the place of its incorporation and in its principal place of business. *See id.* & n.19. Vantage concedes that it does not know of any facts that would give me general jurisdiction over the Reinsurer Defendants. Pl.'s Opp. to Reinsurer Defs.' Mots. Dismiss 12 n.5. And by Vantage's own account, the Reinsurer Defendants are incorporated and have their principal places of business in Germany, Ireland, the United Kingdom, Switzerland, and France. Pl.'s Supp. Filing 4-7. So I do not have general personal jurisdiction over the reinsurers.[6]

A district court that lacks general jurisdiction may still have specific jurisdiction over claims related to acts by which a defendant "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Purposeful availment does not require that a defendant physically enter the forum state. *Burger King*, 471 U.S. at 476.[7] It simply "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts or of the unilateral activity of another party or a third person." *Id.* at 475 (internal citations omitted). For a commercial actor, it is enough that the defendant purposefully directed its efforts toward residents of the forum state or created continuing obligations to forum residents. *Id.* By tying jurisdiction to actions by the defendant that create a

---

[6] Vantage suggests in a footnote that jurisdictional discovery might reveal that the Reinsurer Defendants do enough business in the District of Columbia to give me general jurisdiction. Pl.'s Opp. to Reinsurer Defs.' Mots. Dismiss 12 n.5. But this conjecture does not provide grounds for discovery. *See FC Inv. Grp. V. IFX Markets, Ltd.*, 529 F.3d 1087, 1094 (D.C. Cir. 2008).

[7] The "transacting any business" prong of the District's long-arm statute has the full reach permitted by the Due Process Clause. *Thompson Hine*, 734 F.3d at 1189. This forecloses the Reinsurer Defendants' argument that the long-arm statute does not reach them because they lack a physical presence in the District of Columbia and did not negotiate the reinsurance contracts while physically present in the District. First Reinsurer Defs.' Memo. ISO Mot. Dismiss 13.

"substantial connection" with the forum state, the law ensures the foreseeability of a court's exercise of jurisdiction. *Id.* at 474-75.

The Reinsurer Defendants are commercial actors who purposefully directed their activities at ART, a resident of the District of Columbia. *See* Compl. Ex. 4.[8] They did so by entering reinsurance contracts that created continuing obligations to ART. *See id.* ¶ 52, 65-66. It appears that ART was domiciled in the District of Columbia when the Reinsurer Defendants contracted with it, when it paid premiums to the Reinsurer Defendants, and when it experienced the risk that the reinsurance plans covered. *See id.* Ex. 4 (establishing the District of Columbia as ART's place of domicile); *see also* Compl. ¶ 122 (referencing premiums paid by ART to reinsurers). This establishes a substantial connection between the Reinsurer Defendants and the District of Columbia that does not result from random or fortuitous occurrences and that makes it reasonably foreseeable that a lawsuit related to the contracts would be brought in the District. *See Burger King*, 471 U.S. at 474-75; *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957).

To be sure, as the Reinsurer Defendants point out, "merely entering into a contract with an out-of-state party does not constitute the kind of purposeful availment that subjects a defendant to the laws of the other party's home state." *Katopothis v. Windsor-Mount Joy Mut. Ins. Co.*, 211 F. Supp. 3d 1, 22 (D.D.C. 2016). But "under some circumstances the terms of a contract may well create such a substantial connection between the non-resident and the forum

---

[8] One of the Reinsurer Defendants' Motions to Dismiss describes ART as "an entity located outside the District of Columbia" but cites no evidence to support this characterization. First Reinsurer Defs.' Memo. ISO Mot. Dismiss 15 (questioning ART's connection to the District of Columbia for due process purposes, but not under the long-arm statute). The other motion acknowledges that ART is incorporated in the District, but cites a website listing the address of ART's similarly named parent company to suggest that the company is located in New York. Second Reinsurer Defs.' Memo. ISO Mot. Dismiss 11 & n.8. The uncontroverted record evidence shows that ART is domiciled and licensed in the District of Columbia. Compl. Ex. 4.

that the contract alone could supply the necessary minimum contacts." *Thompson Hine*, 734 F.3d at 1193. And a single insurance contract provides sufficient basis for personal jurisdiction when, as here, the insurance company purposefully enters a contract with, receives payments from, and insures a risk experienced by a forum resident. *McGee*, 355 U.S. at 223 (emphasizing the forum state's "manifest interest in providing effective means of redress for its residents when their insurers refuse to pay claims"); *see also Travelers Health Assoc. v. Va. State Corp. Comm'n*, 339 U.S. 643, 647 (1950) ("[A] state has a legitimate interest in all insurance policies protecting its residents against risks, an interest which the state can protect even though the state action may have repercussions beyond state lines."); *id.* at 648 (noting the "great weight" accorded to a state's interest in enforcing its residents' insurance contracts). The reinsurance contracts fall under this rule because reinsurance is simply "insurance for insurance companies." *See Validus Reinsurance, Ltd. v. United States*, 19 F. Supp. 3d 225, 227 (D.D.C. 2014). Thus, I have specific jurisdiction over Vantage's claims against the Reinsurer Defendants.

### 3. Vantage Has Not Asserted the Court's Jurisdiction Through Proper Service

"Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987). Vantage tried to serve the Reinsurer Defendants through their law firm, Mendes & Mount, which it argues was their authorized agent for service of process under Federal Rule of Civil Procedure 4(h)(1)(B). Pl.'s Opp. to Reinsurer

Defs.' Mots. Dismiss 21-22.[9]  This view finds some support in the reinsurance contracts, which authorize service on Mendes & Mount.  Compl. Ex. 7 Art. XXVI; *id.* Ex. 8 Art. XXVI.[10]

But the Reinsurer Defendants deny that Mendes & Mount is their authorized agent for service of process.  First Reinsurer Defs.' Memo. ISO Mot. Dismiss 15-17; Second Reinsurer Defs.' Memo. ISO Mot. Dismiss 12-13.  They claim that the service provision in the reinsurance contracts authorizes service only if *ART* sues the reinsurers to compel arbitration or to enforce an arbitral award.  First Reinsurer Defs.' Memo. ISO Mot. Dismiss 17; Second Reinsurer Defs.' Memo. ISO Mot. Dismiss 13.  And they are right that the contracts' service provision is not a general authorization of Mendes & Mount to receive service of process in all cases.[11]  The clearest limitation on the service of suit provision is that it "shall not be read to conflict with or override the obligations of the parties to arbitrate their disputes" under the contracts' arbitration clause.  Compl. Ex. 7 Art. XXVI; *id.* Ex. 8 Art. XXVI.

Thus, Vantage can only serve the Reinsurer Defendants through Mendes & Mount if it is entitled to rely on the service clause and can maintain its lawsuit without violating the arbitration

---

[9]  Vantage also makes passing reference to the fact that it served the Willis Defendants, which Vantage alleges the Reinsurer Defendants have identified as their "intermediaries/agents." *Id.* at 21-22.  But they do not offer any reason for treating the Willis Defendants as the Reinsurer Defendants agents for service of process, which is the only relevant agency here.

[10]  Vantage notes that this appears to be a standard provision in policies issued by at least some of the reinsurers but does not explain how the fact is directly relevant.  Pl.'s Opp. to Reinsurer Defs.' Mots. Dismiss 22.  It also argues that the Reinsurer Defendants have conceded that Mendes & Mount is their authorized agent for service of process but cites portions of their Motions to Dismiss that do not in fact concede the point.  *Id.*

[11]  The service provision authorizes service "in such suit" but does not define what types of suits it contemplates.  Compl. Ex. 7 Art. XXVI; *id.* Ex. 8 Art. XXVI.  The immediate context sheds limited light on the question, stating that the service provision "is intended as an aid to compelling arbitration or enforcing such arbitration or arbitral award" and that the reinsurer will submit to the jurisdiction of court if it fails "to pay any undisputed amount claimed to be due hereunder."  Compl. Ex. 7 Art. XXVI; *id.* Ex. 8 Art. XXVI.

clause of the reinsurance contracts.[12]  The Reinsurer Defendants argue that any legal theory allowing Vantage to invoke the benefits of the reinsurance contracts would also require it to submit its claims to arbitration.  First Reinsurer Defs.' Memo. ISO Mot. Dismiss 21-24; Second Reinsurer Defs.' Memo. ISO Mot. Dismiss 17-18.  Vantage responds that it is not seeking the benefit of the reinsurance contracts but is instead seeking to enforce "a direct contractual relationship with the Reinsurers that is separate and apart from the Reinsurance Agreements." Pl.'s Opp. to Reinsurer Defs.' Mots. Dismiss 28.

But Vantage cannot show that it has a direct contractual relationship with the Reinsurer Defendants.  Vantage's argument depends almost completely on a single, unreported, out-of-circuit district court opinion that is distinguishable.  Pl.'s Opp. to Reinsurer Defs.' Mots. Dismiss 23-27.[13]  In it, the Southern District of New York used a two-part test to determine that a reinsurer was directly liable to an insured.  *See World Omni Fin. Corp. v. Ace Capital Re, Inc.*, 2002 WL 3101669 at *2 (S.D.N.Y. Sept. 10, 2002).  First, it asked "whether the reinsurance agent was the ultimate, consistent reimburser of losses of the insured."  *Id.*  Second, it asked "whether this status was conveyed to the insured."  *Id.*

---

[12]  Vantage does not address why it is entitled to rely on service provisions in reinsurance contracts to which it is not a party and, for this reason alone, has failed to carry its burden of establishing jurisdiction.  But because the Defendant Reinsurers have not offered any argument to support their assertion that the service provision only authorizes service by ART, I will go on to evaluate alternative jurisdictional infirmities on which their briefing sheds more light.

[13]  Vantage also includes citations to three treatises and to a second out-of-circuit district court opinion.  *Id.*  It cites the treatises to suggest that reinsurers may be directly liable to the insured if they convey that intention or if the original insurer acted as a "front."  *Id.* at 23, 24 n.13.  It cites the district court opinion to show that post-contract conduct can abrogate or modify a reinsurance contract, resulting in a new contract that cuts out the intermediary insurer.  *Id.* at 25 (citing *Exec. Risk Indem., Inc. v. Charleston Area Med. Ctr., Inc.*, 681 F. Supp. 2d 694, 723-34 (S.D. W. Va. 2009)).  Here, Vantage does not argue post-contract conduct established a new contractual relationship.  *See id.*

While this test may seem favorable to Vantage, the insured in *World Omni* had a clear understanding that the direct insurance company "was not intended to retain any risk" and that the reinsurance company was the only reimburser of losses. *Id.* at *1-2. The reinsurer actually negotiated the basic terms of the insurance contract with the insured before the direct insurance company was even created. *Id.* at *1. Then it had the insured's parent company create the direct insurance company, which "[was] minimally capitalized, [had] never been an independent operating insurance company, and [had] never had the ability to engage in independent underwriting or claims-handling activities." *Id.* The reinsurance company assumed 100% of the insurer's liability and consistently dealt with the insured directly as if it were a direct insurer. *Id.*

Vantage has not alleged facts showing that this is a similar case. It points to allegations in the Complaint that ART was created to access the reinsurance market, that ART retained 10% of the risk it insured for Vantage, that ART had to identify its reinsurers to get Vantage to buy the insurance policy, that ART made it possible for the reinsurers to make money off the direct insurance policy that ART sold Vantage, and that the reinsurers relied on information about Vantage that they received from the Willis Defendants. Pl.'s Opp. to Reinsurer Defs.' Mots. Dismiss 24, 26. It also notes its allegation that, during arbitration, a witness testified that payment of any arbitration award would be between the reinsurers and Vantage. *Id.* at 25. And it makes a few new claims that are not supported by citations to the Complaint or to record evidence. *Id.* at 25-26. But the allegations in the Complaint do not overcome the general rule that a reinsurer does not have a direct contractual relationship with the original insured unless the terms of the reinsurance agreement create such a relationship. *See Bruckner-Mitchell v. Sun Indem. Co. of New York*, 82 F.2d 434, 444 (D.C. Cir. 1936). In fact, some allegations simply describe how reinsurance works. Unlike in *World Omni*, there are no allegations that show the

Reinsurer Defendants were the true parties dealing with Vantage and that the direct insurer was simply created as a straw at their behest.

Because Vantage cannot show a direct contractual relationship with the Reinsurer Defendants, its effort to evade the reinsurance contracts' arbitration clause fails. Because it cannot evade the arbitration clause, which limits the contracts' service of process clause, it cannot serve the Reinsurer Defendants through Mendes & Mount. And because it cannot serve the Reinsurer Defendants through Mendes & Mount, it has not validly asserted the Court's personal jurisdiction over them. *See Omni Capital*, 484 U.S. at 104.

Vantage has asked that, if I determine that service on Mendes & Mount was ineffective, I exercise my discretion to grant it an extension of time to accomplish service in the interest of justice. Pl.'s Opp. to Reinsurer Defs.' Mots. Dismiss 22-23. But Vantage itself has recognized that "[t]he question of service is inextricably intertwined with the merits." *Id.* at 22. Service on Mendes & Mount was ineffective because Vantage seeks to assert rights under a direct contract with the reinsurers that does not exist. This determination goes both to jurisdiction and to the merits, making an extension of time to accomplish service futile. Because Vantage has failed to carry its burden of establishing personal jurisdiction, I will immediately grant the Reinsurer Defendants' Motions to Dismiss. *See Crane*, 894 F.2d at 456.

**B.  Vantage Has Only Stated Negligence Claims Against the Willis Defendants**

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility requires that a complaint raise "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Pleading facts that are "merely

consistent with" a defendant's liability "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 545-46.

Thus, a court evaluating a motion to dismiss for failure to state a claim does not accept the truth of legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678. That said, it construes the complaint in the light most favorable to the plaintiff and accepts as true all reasonable inferences drawn from well-pled factual allegations. *See In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994). Consideration is limited to "the facts alleged in the complaint, any documents either attached to or incorporated in the complaint and matters of which [the court] may take judicial notice." *Hurd v. D.C. Gov't*, 864 F.3d 671, 678 (D.C. Cir. 2017). The moving party bears the burden of showing the complaint's insufficiency. *Cohen v. Bd. of Trs. of the Dist. of Columbia*, 819 F.3d 476, 481 (D.C. Cir. 2016).

Before evaluating the parties' claim-specific disputes, I note two preliminary matters. First, the parties dispute whether the law of the District of Columbia or the law of the United Kingdom applies to Willis Limited. Willis Defs.' Memo. ISO Mot. Dismiss 8 n.3, 10 n.4; Pl.'s Opp. to Willis Defs.' Mot. Dismiss 12 n.7, 16 n.9. As they identify no material difference and focus mainly on the District of Columbia's law, I apply that law.

Second, the Willis Defendants argue that Vantage's Complaint is defective because it asserts its claims against the Willis Defendants collectively without distinguishing among them. Willis Defs.' Memo. ISO Mot. Dismiss 17. But the cases on which the Willis Defendants rely to show that collective pleading is inadequate dealt with collective allegations against unrelated defendants. *See Toumazou v. Turkish Republic of N. Cyprus*, 71 F. Supp. 3d 7, 21 (D.D.C. 2014); *Bender v. N. Am. Telecomm., Inc.*, 750 F. Supp. 2d 1, 6-7 (D.D.C. 2010). The reason

13

courts dismiss claims in situations like this is that "a plaintiff must provide each defendant with fair notice of each claim and its basis." *Toumazou*, 71 F. Supp. 3d at 21. And the Willis Defendants have cited no authority showing that this concern applies when the defendants are part of a single enterprise that happens to be organized into distinct but related corporations as appears to be the case here. Because the Willis Defendants have not shown that the Complaint gives them inadequate notice of Vantage's claims against them, I now consider each claim in turn.

### 1. Vantage Has Failed to State a Claim for Breach of Contract

To state a claim for breach of contract, a plaintiff must allege facts showing that a contract between the parties exists. *Francis v. Rehman*, 110 A.3d 615, 620 (D.C. 2015).[14] According to Vantage, "[t]he Complaint alleges that an agency agreement was formed when Willis collectively undertook to serve as the captive manager for ART PCC, and as the reinsurance intermediary, and particularly when it agreed to convey information at Vantage's request to the Reinsurer Defendants." Pl.'s Opp. to Willis Defs.' Mot. Dismiss 13. But none of the paragraphs in the Complaint that Vantage cites show that the Willis Defendants undertook a contractual obligation to Vantage that they would transmit information to the reinsurers at Vantage's request. *See* Compl. ¶¶ 73-80, 174. And any agency agreement that the Willis Defendants entered when they undertook to act as ART's captive manager and to act as an intermediary between ART and its reinsurers was an agreement between the Willis Defendants and ART—not an agreement between the Willis Defendants and Vantage.

---

[14] Vantage expressly disavows any breach of contract claim as a third-party beneficiary of any contracts between the Willis Defendants and ART. Pl.'s Opp. to Willis Defs.' Mot. Dismiss 12 n.6.

But Vantage argues that the District of Columbia's contract law allows a plaintiff to "bring an action against an insurance company's agent or intermediary for failure to obtain requested insurance." Pl.'s Opp. to Willis Defs.' Mot. Dismiss 12-13. This argument fails for two reasons. First, Vantage has not sought to bring an action against the Willis Defendants for failure to obtain requested insurance. The only breach of contract that Vantage alleges against the Willis Defendants is failure "to provide timely and sufficient information regarding Vantage's loss" to the reinsurers. Compl. ¶ 174.

Second, Vantage has not shown that its relationship with the Willis Defendants is analogous to the relationship between the plaintiff and the insurance broker in the cases on which it relies. In *Zitelman* and *Adkins*, the plaintiffs formed contract relationships with their insurance brokers by calling the brokers directly and obtaining assurances from the brokers that they would arrange for them to be insured. *Zitelman v. Metro. Ins. Agency*, 482 A.2d 426, 427 (D.C. 1984); *Adkins & Ainley, Inc. v. Busada*, 270 A.2d 135, 136-37 (D.C. 1970).[15] These cases establish that a plaintiff may sue an insurance broker who has directly contracted with the plaintiff to act as the plaintiff's agent.[16] They do not establish that a plaintiff may sue an insurance broker who has

---

[15] Vantage also cites to *Hayes*, a case in which the plaintiff was the third-party beneficiary of a contract between his employer and a broker who agreed to find medical malpractice insurance that would cover the doctor. *Hayes v. Chartered Health Plan*, 2006 WL 2983013, *2-3 (D.D.C. 2006). But, as noted above, Vantage asserts no claim as a third-party beneficiary of a contract between Art and the Willis Defendants. Pl.'s Opp. to Willis Defs.' Mot. Dismiss 12 n.6.

[16] Even under these circumstances, it is not clear that District law allows a breach of contract claim. Each of the cases Vantage cites recognized a tort claim. *Hayes*, 2006 WL 2983013 at *3; *Zitelman*, 482 A.2d at 427 n.1; *Adkins*, 270 A.2d at 136. It is true that *Hayes*, which is not a binding authority on District law, cites *Zitelman* and two treatises to suggest that the plaintiff could have brought his negligence claim as a breach of contract claim. *Hayes*, 2006 WL 2983013 at *3. But *Zitelman* suggested the possibility of a contract claim only in dicta, relying on a footnote in *Adkins*. *Zitelman*, 482 A.2d at 427 n.1. And the footnote in *Adkins* merely observes that "[i]t has been suggested" that courts should allow recovery in contract as well as in tort without deciding the question. *Adkins*, 270 A.2d at 137 n.1. This is a question that I need

contracted with the plaintiff's insurer to act as the insurer's agent. For both these reasons,

Vantage has failed to state a contract claim.

### 2. The Willis Defendants Have Not Adequately Challenged Vantage's Negligence, Professional Negligence, and Negligent Undertaking Claims

The Willis Defendants construe Vantage's negligence, professional negligence, and

negligent undertaking claims as "virtually identical." Willis Defs.' Memo. ISO Mot. Dismiss 10;

*see also id.* at 11 (citing the elements of negligence to prove the elements of negligent

undertaking).[17] The only element of these claims that the Willis Defendants challenge in their

Motion to Dismiss is the existence of a duty that they owed to Vantage. *See* Willis Defs.'

Memo. ISO Mot. Dismiss 10-15.[18] But they do not offer any clear standard for determining

when a duty exists or satisfy their burden of showing the Complaint's inadequacy.

---

not decide since Vantage's arguments fail on the alternative grounds discussed above. As a federal court sitting in diversity, I decline to reach this question of District law.

[17] The Willis Defendants do offer one distinct argument about professional negligence, suggesting in a footnote that District law may not recognize a professional negligence cause of action against a captive manager or reinsurance intermediary. *Id.* at 11 n.5. But professional negligence is not a cause of action limited to specific industries. Pl.'s Opp. to Willis Defs.' Mot. Dismiss 15 n.8. A professional negligence action is essentially an ordinary negligence action in which the duty of reasonable care reflects the defendant's "specialized training and experience." *Morrison v. MacNamara*, 407 A.3d 555, 560-61 (D.C. 1979). And Vantage has alleged facts supporting an inference that the Willis Defendants have specialized training and experience that justify a heightened standard of conduct. *See* Compl. ¶¶ 32-36.

[18] In their reply brief, the Willis Defendants raise an argument not addressed in their motion to dismiss. They suggest that District law does not allow recovery of pure economic loss on any of the negligence theories that Vantage proposes. Willis Defs.' Reply ISO Mot. Dismiss 10-12. This issue may justify future briefing, but I decline to resolve the issue now given the apparently ambiguous state of District law and the fact that Vantage has not had the opportunity to respond to this new argument. *See Intelect Corp. v. Cellco P'ship GP*, 160 F. Supp. 3d 157, 184-185 (D.D.C. 2016) (declining to decide the applicability of the economic loss rule on a motion to dismiss but inviting later briefing when the issue was inadequately briefed because "the contours of the economic loss rule are nuanced" and the District of Columbia Court of Appeals has provided little guidance on its interpretation of the rule).

The Willis Defendants raise separate arguments to show that none of the three Willis entities owed a duty. *First*, the Willis Defendants argue that Willis Captive Management's role in managing administrative tasks for ART did not create any duties toward Vantage. *Id.* at 11-12.[19] In support of this argument, they claim that Vantage's Complaint does not allege that Willis Captive Management had any contact with Vantage or undertook to provide any services to Vantage. *Id.* 11.[20] But the Complaint alleges that Aiden Kelly, a Willis Captive Management employee, signed credit insurance binders provided to Vantage to confirm that ART's insurance policy was backed by reinsurance ceded on the same terms as the original insurance policy. Compl. ¶¶ 43-45, 47-48, 51; *see also* Reply ISO Willis Defs.' Mot. Dismiss 8.

The Willis Defendants argue that they had no legal connection to Mr. Kelly's action because he signed the binders as ART's authorized representative. *Id.* at 6, 8. But Mr. Kelly appears to have been acting as ART's representative *because* he was an employee of ART's captive manager, Willis Captive Management. The Willis Defendants cite no facts or legal authority to show that Mr. Kelly's role as ART's representative and his role as a Willis Captive Management employee are mutually exclusive, so that his acts on ART's behalf cannot also be attributed to Willis Captive Management.[21] Contrary to the Willis Defendants' argument,

---

[19] The Complaint does not name Willis Captive Management as a defendant, but the parties appear to treat this as an alternate name for Defendant Willis Towers Watson Management (Vermont), Ltd.

[20] The Willis Defendants also argue that Willis Captive management had no duties toward Vantage because they continued working with ART after Vantage's insurance policy expired. *Id.* at 12. But this conclusion does not follow and is not supported by authority.

[21] In fact, their Motion to Dismiss does not cite any authority to show that Willis Captive Management did not owe a duty to Vantage. Willis Defs.' Memo. ISO Mot. Dismiss 11-12. Their Reply seeks to distinguish the cases on which Vantage relies by noting that they involved damages for physical injuries. Reply ISO Willis Defs.' Mot. Dismiss 7-11. But this argument about the type of damages that are available does not show the absence of a duty arising from

Vantage has alleged facts that at least support a reasonable inference of contact with Willis Captive Management.

*Second*, the Willis Defendants argue that Willis Limited's role as ART's reinsurance intermediary did not establish any duties toward Vantage. Willis Defs.' Memo. ISO Mot. Dismiss 12-15. As with Willis Captive Management, they claim that Vantage's Complaint does not allege that Willis Limited had any contact with Vantage or undertook to provide any services to Vantage.[22] But the Complaint alleges that Willis Limited undertook to transmit "all communications and payments" related to the reinsurance contracts, knowing that the reinsurance was intended to provide for Vantage's compensation in the event of a covered loss, knowing that Vantage considered the reinsurance essential, and intending for Vantage to rely on the representations in the credit insurance binders. Compl. ¶¶ 43, 53-54, 73-75, 78-80. The Complaint also supports the inference that ART had an obligation to Vantage to find reinsurance and that Willis Limited undertook to help ART discharge this obligation. *See id.* ¶¶ 39, 42-43. The Willis Defendants note that these undertakings were contractual obligations to ART but do not explain why they cannot also be tort obligations to Vantage. Willis Defs.' Memo. ISO Mot. Dismiss 12-15.

---

Mr. Kelly's representations to Vantage that could be actionable in a negligence, professional negligence, or negligent undertaking claim. *See WMATA v. Ferguson*, 977 A.2d 375, 377 (D.C. 2009) (listing "a duty of care owed by the defendant to the plaintiff" and "damage to the interests of the plaintiff" as separate elements of a negligence claim); *see also District of Columbia v. McNeill*, 613 A.2d 940, 942-43 (D.C. 1992) (noting that physicians owe patients a duty of care although damages are not available for all injuries resulting from a breach of this duty).

[22] They also argue that Willis Limited owed no duty to Vantage because its work for ART was not "directed solely to protecting Vantage's interests" and continued after Vantage's insurance policy expired. *Id.* at 13. Once again, this conclusion does not follow.

Vantage has made at least a preliminary showing that Willis Limited's contractual undertakings created tort duties owed to Vantage. Pl.'s Opp. to Willis Defs.' Mot. Dismiss 16-18. Under District law, a person who undertakes to render services to one party "which he should recognize as necessary for the protection of a third person or his things" has a duty of reasonable care to the third party. *See, e.g.*, *Presley v. Commercial Moving & Rigging, Inc.*, 25 A.3d 873, 889 (D.C. 2011) (quoting Restatement (Second) of Torts § 324A). Such a person can be liable to a third party if his failure to exercise reasonable care increases the risk of harm or if he has undertaken to perform a duty that the person he is serving owed to the third party. *Id.*[23] The cases that the Willis Defendants cite to the contrary are inapposite. *See Cambridge Holdings Grp., Inc. v. Fed. Ins. Co.*, 489 F.3d 1356, 1358-59 (D.C. Cir. 2007) (addressing contract claims rather than tort claims); *Car Sense, Inc. v. Am. Special Risk, LLC*, 56 F. Supp. 3d 686 (E.D. Pa. 2014) (recognizing that a reinsurance intermediary can owe tort duties to third parties but denying negligent misrepresentation claim by a plaintiff who was not a party to the insurance or reinsurance contracts and who did not rely on the intermediary's representations).

*Third*, the Willis Defendants assert that the Complaint contains no allegations against Willis Re Inc. But the Complaint makes the same allegations about Willis Re Inc.'s role as a reinsurance intermediary that it makes about Willis Limited. Compl. ¶¶ 39, 42-43, 53-54, 73-75, 78-80.[24] So this challenge to the adequacy of the Complaint also fails. Mindful that all

---

[23] Although the Restatement limits damages to a recovery for physical harm, it is not clear whether District law has such a limitation. *See Intelect Corp.*, 160 F. Supp. 3d at 185. In any case, the availability of damages does not go to the Willis Defendants' argument about the existence of a duty.

[24] The Complaint also alleges that Brian Stewart, the Executive Director of Willis Re Inc., told ART he would notify the reinsurers about Vantage's notice of default and that ART believed Mr. Stewart would keep the reinsurers informed about Vantage's arbitration with ART. ¶¶ 31, 83, 115. This may be probative of Willis Re Inc.'s undertaking to act as intermediary or of

reasonable inferences must be drawn in favor of the Plaintiff at this stage, *In re United Mine Workers*, 854 F. Supp. at 915, I find that none of the Willis Defendants' arguments show that Vantage has not alleged facts establishing that they owed it a duty that is actionable in negligence, professional negligence, or negligent undertaking.

### 3. The Willis Defendants Have Not Adequately Challenged Vantage's Negligent Misrepresentation Claim

The Willis Defendants challenge Vantage's negligent misrepresentation claim on two grounds. First, they argue that the Complaint does not satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), which requires a statement of the "time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud, as well as the individuals involved." Willis Defs.' Memo. ISO Mot. Dismiss at 16; *see also Lemon v. Kramer*, 270 F. Supp. 3d 125, 144 (D.D.C. 2017). Second, they argue that the Complaint does not allege facts showing that Vantage reasonably relied on any misrepresentations that they made. Willis Defs.' Memo. ISO Mot. Dismiss 15-16; *see also In re United States Office Prods. Co. Secs. Litig.*, 251 F. Supp. 2d 58, 74 (D.D.C. 2003).

But the Complaint satisfies these requirements for several alleged misrepresentations. Most important, the Complaint alleges that Willis Captive Management employee Aiden Kelly signed credit insurance binders on December 28, 2012 and August 19, 2013, representing to Vantage that the reinsurance policies ceded ART's liability "on the same terms, conditions, and settlements as the original policy." Compl. ¶¶ 47, 51, 183. It also alleges that this representation

_____

Vantage's reasonableness in relying on Willis Re Inc. as an intermediary, but it does not appear to be directly relevant. The Willis Defendants claim that Mr. Stewart worked for Willis Limited and not work for Willis Re Inc., but their unsupported claim does not satisfy their burden. Reply ISO Willis Defs.' Mot. Summary J. 14.

is false because the reinsurance policies limited the reinsurers' obligations to ART and required arbitration. *Id.* ¶¶ 69-70. Relatedly, the Complaint alleges that the Willis Defendants failed to disclose to Vantage that the reinsurance agreements contained terms that conflicted with the representations in the credit insurance binders, so that a loss covered under the insurance policy might not be recoverable by Vantage from the reinsurers. *Id.* ¶¶ 69, 165, 170, 179, 183.[25] The Complaint alleges that Vantage would have tried to insure its risk in other ways except that it reasonably relied on these affirmative misrepresentations and misrepresentations by omission, as the Willis Defendants intended it to do. *Id.* ¶¶ 54, 186.

These allegations are inadequate in three ways, according to the Willis Defendants. *First*, they claim that the statements in the credit insurance binders are not attributable to Willis Captive Management because Mr. Kelly signed them as ART's representative and that the statements have even less connection to the other Willis Defendants. Reply ISO Willis Defs.' Mot. Dismiss 15-16. But I have already rejected the argument that Willis Captive Management bears no responsibility for the insurance binders, and the Complaint alleges that all the Willis Defendants misled Vantage by intentionally allowing it to rely on the binders and failing to provide Vantage material information. Compl. ¶¶ 54, 69, 165, 170, 179, 183.

*Second*, the Willis Defendants claim that the Complaint fails to specify who at Vantage received, reviewed, and relied on the binders. Reply ISO Willis Defs.' Mot. Dismiss 16-17. But the precedent on which they rely does not contain such a requirement. *See In re Office Prods.*, 251 F. Supp. 2d at 74 (requiring that a complaint allege facts showing that "the plaintiffs reasonably and to their detriment relied on the false information"). The Complaint adequately alleges that the Plaintiff, a legal person, relied on the binders. Compl. ¶ 55.

---

[25] An omission may constitute a negligent misrepresentation. *Intelect*, 160 F. Supp. 3d at 186.

*Third*, the Willis Defendants claim that the Complaint fails to allege facts showing that the representations in the credit insurance binders were false. Reply ISO Willis Defs.' Mot. Dismiss 17. But as I have already observed, the Complaint alleges that the binders falsely claimed that the reinsurance policies ceded ART's liability on the same terms as the original policy when in fact the reinsurance policies limited the reinsurers' obligations to ART and required arbitration. Compl. ¶¶ 47, 51, 69-70, 183. So I must reject this challenge to the adequacy of Vantage's allegations about the insurance binders and about the Willis Defendants' misrepresentations, as I have rejected the others.

The Willis Defendants unpersuasively challenge the adequacy of Vantage's allegation that they negligently failed to disclose that they would not convey information about Vantage's loss to the reinsurers. The Willis Defendants argue that Vantage failed to identify who made the misrepresentation to whom and at what time. Reply ISO Willis Defs.' Mot. Dismiss 17 n.4. But the Complaint alleges that when the reinsurance contracts promised that the Willis Defendants would convey "all communications and payments" related to the contracts. Compl. ¶¶ 74. And the Complaint alleges facts supporting an inference that this statement was false at least by the time that Vantage experienced the insured loss. *Id.* ¶¶ 139, 146 (noting that the reinsurers denied coverage because Willis failed to provide information them information about Vantage's loss and that the Reinsurer Defendants said Willis had not been able to confirm that it provided any communications). From that time forward, the Willis Defendants' failure to correct the statement arguably constituted an ongoing misrepresentation to Vantage.[26]

---

[26] In a footnote, the Willis Defendants also challenge the legal sufficiency of Vantage's argument that it reasonably relied on this misrepresentation. Reply ISO Willis Defs.' Mot. Dismiss 17 n.4. But the Willis Defendants offer no reason to question the reasonableness of Vantage's reliance, which reflects the fair assumption that they would follow their contractual obligations when they had not said otherwise. This does not satisfy their burden.

### III.     CONCLUSION

For the reasons stated above, the Reinsurer Defendants' Motions to Dismiss will be granted and the Willis Defendants' Motion to Dismiss will be granted as to Vantage's contract claims but denied as to Vantage's negligence claims.  A separate order will issue.


Dated: August 6, 2018                                                      _____
                                                                                    TREVOR N. MCFADDEN, U.S.D.J.