# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **VANTAGE COMMODITIES FINANCIAL SERVICES I, LLC,**<br><br>Plaintiff,<br><br>v.<br><br>**ASSURED RISK TRANSFER PCC, LLC** *et al.*,<br><br>Defendants. | Case No. 1:17-cv-01451 (TNM) |

## MEMORANDUM AND ORDER

Vantage Commodities Financial Services I, LLC ("Vantage") alleged that reinsurance companies breached their contract with Vantage to reimburse its losses under a reinsurance arrangement. The reinsurance companies moved to dismiss, and the Court granted that motion, finding that Vantage failed to establish the Court's jurisdiction over them. *See Vantage Commodities Fin. Servs. I, LLC v. Assured Risk Transfer PCC, LLC, et al.*, 321 F. Supp. 3d 49, 60 (D.D.C. 2018). Vantage now seeks leave to file an amended complaint and to perfect service. Because some—but not all— of Vantage's claims in its Proposed Amended Complaint would survive a motion to dismiss, the Court will grant in part and deny in part Vantage's motion.

### I.  BACKGROUND

Assured Risk Transfer PCC, LLC ("ART") sold Vantage a credit insurance policy, covering Vantage's losses up to $22 million after Vantage extended $44 million of credit to an energy company. *Id.* at 54. Then Willis Limited, Willis Re Inc., and Willis Towers Watson

Management (Vermont), Ltd. ("Willis Defendants") helped ART reinsure 90% of its own liability by brokering reinsurance contracts with the Reinsurer Defendants. *Id.*

But when the energy company defaulted, ART refused to pay Vantage based on Vantage's purported failure to comply with a collateralization requirement in the credit insurance policy. *Id.* Vantage eventually won a multi-million dollar arbitration award against ART. *Id.* The arbitration award represented the proceeds of the credit insurance policy, but ART says that it cannot pay by itself. *Id.* The Reinsurer Defendants have paid nothing because they claimed that they did not receive prompt notice of Vantage's losses. *Id.* So Vantage sued ART and the Reinsurer Defendants.[1] *Id.* It also sued the Willis Defendants, which Vantage claims offered ART their services in captive insurance management and as reinsurance brokers and intermediaries. *Id.*

This Court granted the Reinsurer Defendants' Motions to Dismiss because it determined that Vantage failed to establish the Court's jurisdiction over the Reinsurer Defendants. *Id.* The Court then ordered Vantage to show cause why its Complaint should not be dismissed as to ART. August 6, 2018 Order, ECF 72.

Vantage filed a response to the show-cause order, *see* Resp. to Order to Show Cause ("Resp."), ECF 74, and a motion for leave to amend its Complaint, *see* Mot. to Amend/Correct, ECF 75. It now seeks to amend its Complaint and perfect service of process on the Reinsurer Defendants. *See* Mem. in Supp. of Pl.'s Mot. 1, ECF 75-24 ("Pl.'s Mem."). The Proposed Amended Complaint again asserts a breach of contract claim against the Reinsurer Defendants and requests a declaratory judgment establishing their contractual obligations. *Id.* at 2. It also

---

[1] The Court has subject matter jurisdiction over Vantage's claims under 28 U.S.C. § 1332 because the parties are diverse, and the amount in controversy exceeds $75,000. *See Vantage*, 321 F. Supp. 3d at 55 n.2.

adds three alternative claims against the Reinsurer Defendants based on the same conduct.[2]  *Id.*  The Reinsurer Defendants oppose Vantage's motion.  *See* Defendants Hannover Rückversicherung AG, Partner Reinsurance Europe PLC, and Caisse Centrale de Reassurance's Mem. in Opp'n, ECF 76 ("Hannover Opp'n"); Reinsurers' Opp'n to Pl.'s Mot., ECF 77 ("Reinsurers Opp'n").

## II.     LEGAL STANDARDS

A plaintiff can amend its complaint "once as a matter of course within 21 days" of service.  Fed. R. Civ. P. 15(a)(1).  In "all other cases," it may amend "only with the opposing party's written consent or the court's leave."  Fed. R. Civ. P. 15(a)(2).  The "grant or denial of an opportunity to amend is within the discretion" of the Court.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "Courts may deny a motion to amend a complaint as futile . . . if the proposed claim would not survive a motion to dismiss."  *James Madison Ltd. by Hecht v. Ludwig*, 82 F.3d 1085, 1099 (D.C. Cir. 1996).

To survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), a complaint must contain sufficient factual allegations that, if true, "state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Plausibility requires that a complaint raise "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Pleading facts that are "merely consistent with" a defendant's liability "stops short of the line between possibility and plausibility."  *Twombly*, 550 U.S. at 545-46.  Thus, a court does not accept the truth of legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere

---

[2] The Court does not believe that oral argument would aid in the determination of these motions and so denies the Plaintiff's request for oral argument.

3

conclusory statements." *Iqbal*, 556 U.S. at 678. Still, courts must construe a complaint in the light most favorable to the plaintiff and accept as true all reasonable factual inferences drawn from well-pleaded allegations. *See In re United Mine Workers of Am. Emp. Benefit Plans Litig.*, 854 F. Supp. 914, 915 (D.D.C. 1994).

## III. ANALYSIS

In the Proposed Amended Complaint, Vantage claims again that the Reinsurer Defendants breached a contract with Vantage. Prop. Am. Compl. ¶¶ 161-72. In the alternative, it asserts (1) an implied-in-fact contract claim; (2) a promissory estoppel claim; and (3) an unjust enrichment claim. *Id.* at ¶¶ 198-215.

### A. Vantage Has Not Stated a Claim for Breach of Contract

In its original Complaint, Vantage alleged that the Reinsurer Defendants entered into "valid and binding contractual agreements" to pay Vantage "on the same terms, conditions, and settlements as the" Credit Insurance Policy. Compl. ¶ 152, ECF 1. Now, Vantage seeks to clarify that the Reinsurer Defendants created this contractual relationship when ART and the Willis Defendants—as agents for the Reinsurer Defendants—gave Vantage the Credit Insurance Binders, which "provided confirmation that the reinsurance that backed up the Credit Insurance Policy." Prop. Am. Compl. ¶¶ 44; 65.

"For an enforceable agreement to exist there must be both (1) agreement as to all material terms and (2) intention of the parties to be bound." *Mawakana v. Bd. of Trustees of Univ. of D.C.*, 113 F. Supp. 3d 340, 346 (D.D.C. 2015) (quoting *Cambridge Holdings Grp., Inc. v. Fed. Ins. Co.*, 357 F. Supp. 2d 89, 94 (D.D.C. 2004)). And "the plain and unambiguous meaning of a

4

written agreement is controlling, in the absence of some clear evidence indicating a contrary intention." *Vogel v. Tenneco Oil Co.*, 465 F.2d 563, 565 (D.C. Cir. 1972).

Even if ART and the Willis Defendants were agents for the Reinsurer Defendants, Vantage fails to allege facts showing that the Credit Insurance Binders created a contractual relationship. The Binders disclose the existence of the reinsurance policy and its terms, but that description alone does not create a contractual relationship with the Reinsurer Defendants. The Binders do not include an offer but rather merely a description. As before, "the allegations in the Complaint do not overcome the general rule that a reinsurer does not have a direct contractual relationship with the original insured unless the terms of the reinsurance agreement create such a relationship." *Vantage*, 321 F. Supp. 3d at 60.

The Court will thus deny Vantage's motion for leave to amend its Complaint as to Count I Breach of Contract and Count II Declaratory Judgment.

**B. Vantage Has Adequately Stated a Claim for Breach of Implied Contract**

Vantage also alleges that there was an implied contractual agreement, even if there was not an express contract. Pl.'s Mem. 13. Here, Vantage is on firmer ground.

"All the necessary elements of an express contract—including offer, acceptance, and consideration—must be shown in order to establish the existence of an implied-in-fact contract." *Paul v. Howard Univ.*, 754 A.2d 297, 311 (D.C. 2000). An implied-in-fact contract "differs from other contracts only in that it has not been committed to writing or stated orally in express terms, but rather is inferred from the conduct of the parties in the milieu in which they dealt." *Bloomgarden v. Coyer*, 479 F.2d 201, 208 (D.C. Cir. 1979).

The Reinsurer Defendants insist that "the allegations of the proposed complaint" suggest that the Willis Defendants and ART "acted in service of *Vantage*, not of the Reinsurer

5

Defendants." Reinsurers Opp'n 11. Whether Vantage can prove that ART and the Willis Defendants acted as agents *for* the Reinsurer Defendants is yet to be seen, but Vantage has alleged sufficient facts in support of its allegation of agency at this early stage. The Proposed Amended Complaint claims that ART's President testified that ART "merely facilitated the transaction between Vantage and [the] Reinsurer Defendants." *Id.* ¶ 66. It also alleges that the Reinsurer Defendants delegated their underwriting authority to ART's President and designated him as their "King Man," mandating that he "remain employed by [ART] as condition to providing reinsurance." *Id.* ¶¶ 80-82.

Applying the motion to dismiss standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. The Binders stated that the Reinsurer Defendants would pay 90% of Vantage's losses "on the same terms, conditions and settlements" as the Credit Insurance Policy. *Id.* ¶ 68. These Binders allegedly were given *to* Vantage *by* the Reinsurer Defendants' agents. *Id.* ¶ 65. And the Credit Insurance Binders alone do not resolve the issue of whether there was an implied contract. All parties knew that ART lacked the funds to pay Vantage's losses. Prop. Am. Compl. ¶ 72. And Vantage "insisted on being involved in the selection and approval of the reinsurers." *Id.* ¶ 43. Viewing the facts in light most favorable to Vantage, as this Court must, it is plausible that the Reinsurer Defendants knew that Vantage expected the Reinsurer Defendants to pay and agreed to this arrangement.

The Reinsurer Defendants argue that Vantage has "not pled circumstances that would have notified" them that Vantage expected to be paid by them and not ART. Reinsurers Opp'n 11. But Vantage alleges that the Reinsurer Defendants knew that ART alone could not pay Vantage's losses under the policy, Prop. Am. Compl. ¶ 72, and the Reinsurer Defendants

6

planned to pay most of Vantage's losses and also collect substantial premiums. *Id.* at ¶¶ 57-63, 72.

The Court finds that Vantage has stated a claim for breach of implied contract, particularly given the the Credit Insurance Binders, underlying insurance arrangement, and alleged agency relationship. The Court will therefore allow Vantage to add this claim for breach of an implied-in-fact contract.

### C. Vantage Has Adequately Stated a Claim for Promissory Estoppel

Vantage also seeks to assert a promissory estoppel claim. A claim for promissory estoppel requires "(1) a promise; (2) that the promise reasonably induced reliance on it; and (3) that the promisee relied on the promise to his or her detriment." *Myers v. Alutiiq Int'l Solutions, LLC*, 811 F. Supp. 2d 261, 272 (D.D.C. 2011). Reliance on an indefinite promise is unreasonable, so the promise must have definite terms on which the promisor would expect the promisee to rely. *See Granfield v. Catholic Univ. of Am.*, 530 F.2d 1035, 1040 (D.C. Cir. 1976). The "promise need not contain language as specific and definite as that of an enforceable contract." *Osseiran v. Int'l Fin. Corp.*, 498 F. Supp. 2d 139, 147 (D.D.C. 2007).

The Reinsurer Defendants insist that Vantage does not allege any direct dealings with the Reinsurer Defendants from which to imply a promise. Reinsurers Opp'n 11. Not so. According to Vantage, it dealt directly with the Reinsurer Defendants through their agents: the Willis Defendants and ART. The Proposed Amended Complaint alleges that when the Reinsurer Defendants' agents delivered the Credit Insurance Binders, the Reinsurer Defendants essentially promised to pay Vantage's losses "pursuant to the same terms, conditions and settlements" as the Credit Insurance Policy. Prop. Am. Compl. ¶ 206. Because "the promise need not contain language as specific and definite as that of an enforceable contract," the Court finds an allegation

7

of a promise based on the *conduct* of the Reinsurer Defendants and their alleged agents. *See Osseiran*, 498 F. Supp. 2d at 147.

According to Vantage, it reasonably relied on that promise, and its reliance was to its detriment because the Reinsurer Defendants refused to pay Vantage's losses. Prop. Am. Compl. ¶¶ 207-09. Vantage has plausibly alleged reasonable reliance given both the specific insurance arrangement and Vantage's allegation that ART and the Willis Defendants were acting as the Reinsurer Defendants' agents when they provided Vantage with the Credit Insurance Binders.

In the context of a motion for leave to amend, where the Court must "draw all reasonable inferences from [the Complaint's] allegations in the plaintiff's favor," *Banneker Ventures, LLC v. Graham*, 798 F.3d 1119, 1129 (D.C. Cir. 2015), the Court concludes that Vantage may be able to prove that it is entitled relief on this claim. So Vantage may also amend its complaint to add this promissory estoppel claim.

### D. Vantage Has Adequately Stated a Claim for Unjust Enrichment

Finally, Vantage's unjust enrichment claim also meets the minimum standards applicable here. The Proposed Amended Complaint alleges that Vantage conferred a benefit on the Reinsurer Defendants when it paid premiums to the Reinsurer Defendants' agents. Prop. Am. Compl. ¶ 212. According to Vantage, it would be unjust for the Reinsurer Defendants to keep these premiums because they have paid nothing in return. *Id.* ¶¶ 213-14.

"Unjust enrichment occurs when: (1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *Campbell v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 130 F. Supp. 3d 236, 255 (D.D.C. 2015) (quoting *Fort Lincoln Civic Ass'n, Inc. v. Fort Lincoln New Town Corp.*, 944 A.2d 1055, 1076 (D.C. 2008)). "A claim that unjust enrichment occurred is context-specific

and will require consideration of 'the particular circumstances giving rise to the claim' that the retention of a given benefit is unjust." *Campbell*, 130 F. Supp. 3d at 255 (quoting *Peart v. D.C. Hous. Auth.*, 972 A.2d 810, 813-14 (D.C. 2009)). An unjust enrichment claim "is a 'legal fiction' designed 'to permit recovery by contractual remedy in cases where, in fact, there is no contract, but where circumstances are such that justice warrants a recovery as though there had been a promise.'" *In re APA Assessment Fee Litig.*, 766 F.3d 39, 46 (D.C. Cir. 2014) (quoting *4934, Inc. v. D.C. Dep't of Emp't Servs.*, 605 A.2d 50, 55 (D.C. 1992)).

Vantage has adequately stated its unjust enrichment claim. The Reinsurer Defendants argue that Vantage paid premiums only to ART and the Willis Defendants. Reinsurers Opp'n 13-14. But, according to the Proposed Amended Complaint, ART and the Willis Defendants were acting as agents for the Reinsurer Defendants when collecting premiums from Vantage, and the Court must view the facts in light most favorable to Vantage at this early stage. *See In re United Mine Workers*, 854 F. Supp. at 915. Moreover, "[a] benefit indirectly conferred on a defendant can support an unjust enrichment claim." *Campbell*, 130 F. Supp. at 256-57. And there is no dispute that the Reinsurer Defendants received premiums or that premiums constitute a benefit.

Vantage alleges that it is unjust for the Reinsurer Defendants to keep these premiums without paying for Vantage's losses "on the same terms, conditions and settlements as the" Credit Insurance Policy. Prop. Am. Compl. ¶ 214. The Reinsurer Defendants argue that Vantage has not alleged how the *payments* of premiums was unjust, but either way, it is certainly plausible that it is unjust for the Reinsurer Defendants to *keep* these premiums without paying

anything. Given the plaintiff-favoring standard at this stage, the Court finds that Vantage has adequately alleged its unjust enrichment claim.

To be sure, if Vantage proves that the existence of an implied contract, it cannot prevail on its promissory estoppel and unjust enrichment claims. *See In re APA Assessment Fee Litig.*, 776 F.3d at 331. This is because a court may not displace the terms of a contract and impose other duties not chosen by the parties. *See Emerine v. Yancey*, 680 A.2d 1380, 1384 (D.C. 1996). But "there is no rule against pleading in the alternative." *Long Beach Sec. Corp. v. Nat'l Credit Union Admin. Bd.*, 315 F. Supp. 3d 129, 143 (D.D.C. 2018). As such, all three of these theories of recovery may be added to Vantage's Complaint. Time will tell which—if any—of Vantage's theories bear fruit.

### E. Vantage May Serve the Reinsurer Defendants in Their Home Countries

Along with requesting leave to file an amended complaint, Vantage also seeks leave to perfect service on the Reinsurer Defendants, preferably through the District of Columbia Department of Insurance, Securities, and Banking but otherwise in their home countries. Mot. to Amend/Correct 1-2. When the Court originally determined that Vantage's service was ineffective, it also determined that an extension of time to accomplish service would be futile. *Vantage*, 321 F. Supp. 3d at 60-61. Service was futile then because "Vantage [sought] to assert rights under a direct contract with the reinsurers that does not exist." *Id.* at 60. Now, however, Vantage's claims do not depend on a non-existent contract.

The Court will grant leave for Vantage to attempt to serve the Reinsurer Defendants. But the Court will not order the Department of Insurance, Securities, and Banking to accept service for the Reinsurer Defendants. Vantage offers no authority for the proposition that service on a

non-party constitutes proper service or that the Court can order this non-party to accept service on the Reinsurer Defendants' behalf.

Still, Vantage may have additional time to perfect service on the Reinsurer Defendants in their home countries. Federal Rule of Civil Procedure 4(m) explains that the general time limit does not apply to foreign service. *See Ashraf-Hassan v. Embassy of France in U.S.*, 878 F. Supp. 2d 164, 173-74 (D.D.C. 2012). Rather, the Court will apply a standard of "flexible due diligence." *Id.* Under such a standard, the Court will allow Vantage more time to attempt to serve the Reinsurer Defendants with its Amended Complaint.

**F. Vantage's Complaint as to ART will be Dismissed**

Vantage argues that its Complaint should not be dismissed as to ART because (1) Vantage's failure to serve the Reinsurer Defendants can be cured; (2) its Proposed Amended Complaint will "conclusively establish the basis for ART's continued participation; and (3) dismissing ART now would be "premature and inefficient." Resp. 1.

Whether Vantage can serve the Reinsurer Defendants is irrelevant to the question of whether ART should remain. Even though Vantage promised that its Proposed Amended Complaint "would more particularly establish the necessity for ART to remain in this case," *see id.* at 5, neither the Proposed Amended Complaint nor Vantage's Response to the Court's Show-Cause Order does so.

Vantage does not seek relief from ART, presumably, because it already has a judgment against it in New York. Prop. Am. Compl. ¶ 22. The Proposed Amended Complaint only alleges that ART is an "interested party" as to the Declaratory Judgment Count. *Id.* ¶ 170. And this count is still dismissed as to the Reinsurer Defendants because Vantage has not stated a

viable claim for breach of contract in its Proposed Amended Complaint. For these reasons, this Court will now dismiss Vantage's Complaint as to ART.[3]

## IV. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED** that Plaintiff's Motion for Leave to Amend is GRANTED in part and DENIED in part. It is granted as to Count VIII, IX, and X of the Proposed Amended Complaint and denied as to Count I and Count II of the Proposed Amended Complaint; and it is

**ORDERED** that Plaintiff shall update the Court within 60 days as to efforts to perfect service on Reinsurer Defendants; and it is

**ORDERED** that Plaintiff's Complaint as to ART is DISMISSED.

Dated: November 16, 2018

TREVOR N. MCFADDEN
United States District Judge

---

[3] The Reinsurer Defendants argue that the Court should award costs and fees incurred in opposing Vantage's motion in order to sanction Vantage. Because there is no evidence of recklessness, bad faith, or improper motive, the Court rejects this pursuit of damages and costs. *See Hall v. Dep't of Homeland Sec.*, 219 F. Supp. 3d 112, 119 (D.D.C. 2016) ("The issuance of [a sanction] award is ultimately vested in the discretion of the district court.").

12